UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GABRIELLE DOUYON,

                        Plaintiff,

             - against -

NY MEDICAL HEALTH CARE, P.C.,
SEYMOUR SCHNEIDER, *AKA SY
SCHNEIDER*, KOUROSH GOLYAN,
*AKA DAVID GOLYAN*, NATHAN KHAIMOV,
FARAIDOON DANIEL GOLYAN, M.D.,

                        Defendants.
--------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 10-3983 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Plaintiff Gabrielle Douyon ("Plaintiff" or "Douyon") has brought this lawsuit on the basis

of alleged unfair, abusive and deceptive practices utilized by the Defendants in their attempt to

collect an alleged medical debt from the Plaintiff.  Am. Compl. ¶ 2.  As a First Cause of Action,

Plaintiff asserts claims for violations of various provisions of the Fair Debt Collections Practices

Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* against Defendant Seymour (a.k.a Sy) Schneider

("Schneider") only.  The following claims are asserted against all Defendants:  Deceptive Acts

and Practices Unlawful in Violation of New York General Business Law ("NY GBL") § 349

(Second Cause of Action), Intentional Infliction of Emotional Distress (Third Cause of Action ),

and Slander (Fourth Cause of Action).  Plaintiff also asserts claims for Negligent Hiring,

Retention, Training, and Supervision (Fifth Cause of Action) and Negligence (Sixth Cause of

Action) against Defendants NY Medical Health Care, P.C. ("NY Medical") and Faraidoon

Daniel Golyan, M.D. ("Dr. Golyan").  Both parties have moved for summary judgment.  Plaintiff

seeks partial summary judgment for certain violations of the FDCPA by Defendant Schneider and for certain violations of NY GBL § 349 by all Defendants.  Defendants seek summary judgment on Plaintiff's NY GBL § 349 claim as well as her intentional infliction of emotional distress and negligence claims.  Defendants also seek summary judgment on the issue of whether NY Medical can be held vicariously liable for Schneider's acts.

The parties submitted the following documents in connection with Plaintiff's motion for summary judgment:  Plaintiff's Memorandum of Law [DE 72-19] ("Pl's Mem."); Plaintiff's Rule 56.1 Statement [DE 72-1] ("Pl's. Stmt."); Defendants' Memorandum of Law in Opposition [DE 73] ("Defs.' Opp. Mem.) with Exhibits [DE 75]; Defendants' Rule 56.1 Counterstatement [DE 73-1] ("Defs.' Counterstmt."); Plaintiff's Reply Memorandum of Law [DE 74] ("Pl's Reply Mem."); and the Declaration of Daniel A. Schlanger, Esq. [DE 72-2] ("Schlanger Decl.") with Exhibits.  In connection with Defendants' motion, the Court reviewed and considered the following:  Defendants' Memorandum of Law [DE 68-1] ("Defs.' Mem."), Defendants' Rule 56.1 Statement [DE 68-2] ("Defs.' Stmt.") with Exhibits; Plaintiff's Memorandum of Law in Opposition [DE 70] ("Pl's. Opp. Mem."); Plaintiff's Rule 56.1 Counterstatement and Statement of Additional Facts [DE 69] ("Pl's. Counterstmt.");[1] the Declaration of Daniel A. Schlanger, Esq. [DE 69-1] ("Schlanger Opp. Decl.") with Exhibits; Defendants' Counterstatement in Response to Plaintiff's Statement of Additional Facts [DE 71-1] ("Defs' Reply Counterstmt."); Defendants'

---

[1]     Plaintiff's Counterstatement does not set forth the text of the paragraphs to which it responds.  Moreover, in several instances, Plaintiff does not simply state whether the statement is disputed or undisputed, but rather attempts to re-characterize the statement.  The confusion is compounded by the fact that at approximately paragraph 12, Plaintiff added an additional paragraph resulting in the numbers that follow being incorrect.  Despite these errors, the Court was able to discern whether or not Plaintiff contests some of Defendants' statements of fact and has therefore relied on the Counterstatement to that extent.

Reply Memorandum of Law [DE 71] ("Defs.' Reply Mem."); and the Affidavit of Kourosh

Golyan [DE 71-2]. Having considered the foregoing submissions, as well as the applicable law,

the Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment and

GRANTS in part and DENIES in part Defendants' motion for summary judgment for the reasons

that follow.

## I.   BACKGROUND

The following undisputed facts are drawn from the parties' Rule 56.1 Statements and the

Stipulated Facts set forth in the Proposed Joint Pre-Trial Statement signed by both parties

[DE 60] ("Pre-Trial Stmt."). In considering a motion for summary judgment, the Court construes

the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New*

*York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

### A.   The Parties

Plaintiff Gabrielle Douyon is a resident of Elmont New York. *See* Defs.' Counterstmt.

¶ 1. Douyon is a "consumer" as that term is defined under the FDCPA. *Id*. ¶ 2.

Defendant NY Medical is a cardiology practice with principal places of business in Great

Neck, New York and Forest Hills, New York. *Id*. ¶ 3. Defendant Kourosh Golyan, a.k.a. David

Golyan ("David Golyan"), is the office manager of NY Medical and oversees its collection

activities. *Id*. ¶ 4. Defendant Faraidoon Daniel Golyan, M.D. ("Dr. Golyan") is a licensed

medical doctor and co-owner of NY Medical. Pre-Trial Stmt. ¶ 3.

Defendant Schneider has worked as a freelance debt collector since 2009. Defs.'

Counterstmt. ¶ 15. NY Medical retained Schneider's services in connection with its attempt to

collect a debt from Plaintiff. *Id*. ¶ 13.

### B.    Douyon's Surgery and the Alleged Debt

On or about September 24, 2009, the Plaintiff was admitted to North Shore Hospital in

Westbury, New York for emergency heart surgery.  Am. Compl. ¶ 24.  The Plaintiff's

cardiologist did not have admitting privileges at North Shore Hospital at that time.  *Id*. ¶ 25.  As

a result, Dr. Golyan performed emergency heart surgery on Plaintiff.  *See* Defs.' Counterstmt.

¶ 5; Pre-Trial Stmt. ¶ 4.  Dr. Golyan also saw Plaintiff in the hospital and in the offices of NY

Medical after her surgery.  Defs.' Counterstmt. ¶ 5.   Plaintiff continued to receive treatment from

Dr. Golyan for approximately nine months, up until June 2010.  Am. Compl.  ¶ 27.

NY Medical negotiated with Plaintiff's employer and the employer's third-party benefits

administrators to reduce Plaintiff's NY Medical bill from $76,587 to $40,000.  Pre-Trial Stmt.

¶ 5.  Plaintiff's insurer, Empire Blue Cross/Blue Shield ("Empire"), paid $34,000 of that bill to

NY Medical directly.  Defs.' Counterstmt. ¶ 7.  Empire also sent Plaintiff a check for

approximately $5,000 in early 2010.  Pre-Trial Stmt. ¶ 6.[2]  Plaintiff did not pay over to NY

Medical the $5,215 after receiving the checks from Empire, but rather claims that she cashed the

checks and then sent the money to her relatives in Haiti.  *See* Defs.' Stmt. ¶ 9; Pl's. Counterstmt.

¶ 9. This alleged payment shortfall is denominated a "debt" and was previously the subject of a

---

[2]      There is some confusion as to the exact amount of the checks sent by Empire.  Although
the parties agree that the checks totaled $5,215 in the Pre-Trial Statement, the Rule 56.1
Statements reflect a dispute over the exact amount.  In her Rule 56.1 Statement, Plaintiff claimed
she received checks totaling $4,478 from Empire and in response, Defendants stated that she
received $5,378.  *See* Defs.' Counterstmt. ¶ 6.  In Defendants' 56.1 Statement, Defendants stated
that Plaintiff received $5,215 and Plaintiff responded that she received a total of $5,378.  *See*
Pl's. Counterstmt. ¶ 9.  Because the parties submitted different sets of checks and one of the
checks in Defendants' submission is illegible, the Court cannot resolve this discrepancy.  *See*
Pl's. Stmt., Ex. M; Defs.' Stmt, Ex. D.  The exact amount of the checks, however, is not a
material fact.

4

breach of contract counterclaim asserted by NY Medical against Plaintiff in this case. *See* DE 56. However, on November 25, 2011, NY Medical filed a Notice of Acceptance of Offer of Judgment in the amount of $5,378 with respect to that claim, *see* DE 65, and Judgment was entered, *see* DE 66.

### C.   Defendants' Debt Collection Attempts

NY Medical retained the services of Defendant Seymour Schneider to collect Plaintiff's debt. Defs.' Counterstmt. ¶ 13. NY Medical employed Schneider on multiple occasions to collect debts owed by its patients and compensated him by paying him a percentage of the funds he collected from debtors. Pl's. Counterstmt. ¶ 6; Defs.' Counterstmt. ¶ 17.

At some point in the summer of 2010, Schneider visited Douyon's place of work and discussed with her the alleged debt she owed NY Medical. Defs.' Counterstmt. ¶¶ 21-22. During that visit, Schneider discussed Plaintiff's alleged debt in the presence of Douyon's co-worker, Donna Tucker. *Id*. ¶ 22. When Schneider departed Douyon's workplace after his initial visit, he left his business card. *Id*. ¶ 23. The business card depicts an American flag and bears the title "Financial Crimes Investigator" under Schneider's name. *Id*.

In connection with his debt collection efforts, Schneider left Plaintiff a message on her voicemail. *See id*. ¶ 25. The parties offer slightly different transcriptions of the message in their Rule 56.1 Statements. *See id*. However, in the "Stipulated Facts" section of the Joint Pre-Trial Statement, the parties agreed that Schneider left the following message:

> (Undecipherable) appreciate necessarily (Undecipherable) by coming out to your house with the uh doctors. I'm gonna be at your place tomorrow, at your employment and I'm gonna see about coming with the sheriff and have you arrested. You want to play games and I'm gonna play the same game and I'm gonna be the winner.

5

Joint Pre-Trial Stmt. ¶ 18.  Schneider never actually contacted the sheriff.  Defs.' Counterstmt. ¶ 26.

In addition to Schneider's efforts, David Golyan sent Plaintiff letters on January 19, 2010 and March 15, 2010 which contained the following language:

> ** Please Note: if we do not receive the check(s) by [date].  We have no other choice to place your account in our legal department which will result in a 10% percent interest every 30 days on the full amount of the balance due with Interest Accumulated added to the principal amount due**

*See id*. ¶ 8; Schlanger Aff., Ex. H.  Plaintiff testified that she did not receive these letters.  Defs.' Stmt. ¶ 11; Pl's. Counterstmt. ¶ 12.

The Amended Complaint alleges other debt collection activity by Defendants.  However, only the undisputed facts are set forth in this section.  To the extent that the other activity is relevant to this motion, that activity is discussed below.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) dictates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n,* 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

6

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.*; *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims . . . .") (internal quotation marks omitted).

## III. DISCUSSION

### A.      The FDCPA Claims

Although the Amended Complaint alleges several distinct violations of the FDCPA, Plaintiff seeks summary judgment only with respect to the violations for which she claims the underlying facts are undisputed, namely:  (1) Schneider's failure to make required statutory disclosures; (2) Schneider's improper disclosure of information concerning Douyon's debt to third parties; (3) the voicemail message left by Schneider that allegedly contains false threats of

7

arrest; and (4) Schneider's distribution of his business card which gave the false impression that he is primarily a criminal investigator and that he is affiliated with the United States.  Pl's. Mem. [DE 72-19] at 9-14.  The Court will address each alleged violation in turn, but first addresses a threshold matter – whether Schneider is a debt collector under the FDCPA.[3]

Subject to certain exceptions not applicable here, a "debt collector" under the FDCPA is any person:

> who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a.  Plaintiff's Rule 56.1 Statement asserts that Schneider is a debt collector. Pl's. Stmt. [DE 72-1] ¶ 14.  In response, Defendants state that whether or not Schneider is a debt collector is a legal conclusion "that is respectfully referred to the Court for resolution."  Defs.' Counterstmt. [DE 73-1] ¶ 14.

The Court concludes that Schneider *is* a debt collector under the FDCPA.  First, the instrumentality of interstate commerce element is satisfied here because Schneider testified that he used telephones as part of the debt collection process.  *See* Schneider Tr. at 39 ("Usually, after a first visit, I might have called to see if they were in, they got my message, if I left a message with someone at the house."), 50 ("It was a hot night, and I had called her . . . .").[4]  It is well-settled that the use of a telephone satisfies the instrumentality of interstate commerce element

---

[3]      The parties do not dispute that Plaintiff is a consumer under the FDCPA.  *See* Def's. Counterstmt. [DE 73-1] ¶ 2.

[4]      Excerpts of the Transcript of Schneider's Deposition ("Schneider Tr.") are attached as Exhibit G to the Schlanger Declaration [DE 72-2], Exhibit 3 to Defendants' Memorandum of Law in Opposition [DE 75], and Exhibit B to Plaintiff's Rule 56.1 Counterstatement [DE 69].

under the FDCPA.  *Bridge v. Ocwen Fed. Bank,* FSB, 681 F.3d 355, 360 (6th Cir. 2012); *Watters v. Midland Credit Mgmt., Inc.*, No. 11-CV-177, 2012 WL 1666059, at *9 (D. Utah May 8, 2012) ("It is general knowledge that telephones are instrumentalities *of* interstate commerce whether or not they are used *in* interstate commerce."); *Ellis v. Solomon & Solomon, P.C.*, 599 F. Supp. 2d 298, 300 n.3 (D. Conn. 2009), *aff'd* 591 F.3d 130 (2d Cir. 2010), *cert denied* 130 S. Ct. 3333 (2010) (defendant admitted that its "principal business in Connecticut is the collection of individual accounts owed using the instrumentalities of interstate commerce, including telephone and mail services"); *see United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006) (holding that national telephone network was a facility of interstate commerce under the federal murder-for-hire statute).

As to the regular or principal debt collection aspect of the statute, Defendants admit that since 2009, Schneider "has primarily worked as a freelance debt collector . . . . [a]nd from approximately May through September 2010 Mr. Schneider's freelance debt collection work included collecting money owed to New York Medical."  Defs.' Counterstmt. [DE 73-1] ¶ 15. Moreover, Schneider testified that his job at his former employer, C.L.B., "was to go after [debtors] and try to collect the money that [clients] had, you know, paid out."  Schneider Tr. at 20.  Schneider further testified that he continued to perform these services on a freelance basis beginning in 2009 for clients, including NY Medical.  *See id.* at 25, 28.  Schneider estimated that he handled from 15 to 20 debt collection cases for NY Medical and 10 to 30 cases as a freelancer in 2009.  *Id*. at 25-26, 35.  Based on these facts, the Court concludes that Schneider's conduct satisfies the regular or principal debt collection prong of the definition and that Schneider was a "debt collector" for purposes of the FDCPA.

9

### 1.      *Failure to Make Statutory Disclosures*

The FDCPA requires debt collectors to provide consumers with certain statutory notices which Plaintiff claims Schneider failed to provide.  Defendants did not submit any opposition regarding these claims.

Plaintiff first argues that Schneider violated 15 U.S.C. § 1692g, which mandates that a debt collector send the consumer a written notice containing, *inter alia*, the following information:

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(3)-(5); *see Derisme v. Hunt Leibert Jacobson, PC*, No. 10-CV-244, 2010 WL 4683916, at *4 (D. Conn. Nov. 10, 2010).  The statement must be provided within five days after the initial communication with the consumer unless the initial communication contains the statements or the consumer has paid the debt.  15 U.S.C. § 1692(a).  Plaintiff alleges that Schneider failed to provide the required statements within five days of his initial communication with Plaintiff.  Am. Compl. ¶ 60.ix.

The notices required under 15 U.S.C. § 1692g must, by the terms of the statute, be in writing. Defendants admit that "aside from his business card, [Schneider] never gave Ms. Douyon any documents." Defs.' Counterstmt. [DE 73-1] ¶ 27; *see* Affidavit of Seymour Schneider ¶ 4 ("Schneider Aff.), Ex. 2 to Defs.' Opp. Mem. [DE 75]. The business card does not contain any of the 15 U.S.C. § 1692g notices. *See* Schlanger Decl., Ex. J. Section 1692g is a strict liability statute and a debt collector commits a violation whenever it fails to provide the required notice, regardless of whether or not the lack of disclosure is egregious and whether or not it caused any actual harm. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Ostrander v. Dentistry by Dr. Kaplansky, PLLC*, No. 07-CV-852, 2010 WL 1407300, at *6 (W.D.N.Y. Mar. 30, 2010); *Savino v. Computer Credit, Inc.*, 960 F. Supp. 599, (E.D.N.Y. 1997); *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1154 (E.D.N.Y. 1996). There are no genuine issues of material fact regarding whether Schneider provided Plaintiff with the required written disclosures. Clearly, he did not. Therefore, Plaintiff is entitled to summary judgment on her § 1692g claim.

Section 1692e(11) also requires debt collectors to provide certain disclosures. Specifically, the subsection provides:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

11

15 U.S.C. § 1692e(11).  The statements required to be provided in the initial communication are often referred to as "Mini Miranda" notices.  *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 650 (S.D.N.Y. 2006).  Plaintiff seeks summary judgment on her claim that Schneider violated § 1692e(11) because Schneider failed to include the required disclosures in his business card or in documents he allegedly left with Plaintiff at her workplace, *see* Pl's. Mem. [DE 72-19] at 10-11, or in the recorded voicemail message he left for Plaintiff, *see id*. at 13-14.

Plaintiff's motion is denied to the extent it is based on Schnider's business card and documents Schneider allegedly left at Plaintiff's workplace.  The only § 1692e(11) claims alleged in the Amended Complaint pertain to Schneider's telephone messages and oral statements.  *See* Am. Compl. ¶ 60 vi-viii.  Thus, all of the § 1692e claims are premised on oral communications and the failure to include "e(11)" notices in the written material referenced by Plaintiff is not before the Court.

The  Court does find, however, that Plaintiff is entitled to summary judgment on her § 1692e(11) claim with respect to the recorded voicemail message left by Schneider.  In the voicemail message, Schneider stated:

> *(Undecipherable)* appreciate necessarily *(Undecipherable)* by coming out to your house with the uh doctors. I'm gonna be at your place tomorrow, at your employment and I'm gonna see about coming with the sheriff and have you arrested. You want to play games and I'm gonna play the same game and I'm gonna be the winner.

Joint Pre-Trial Stmt. [DE 60] ¶ 18.  Since this message was not the initial communication, the only disclosure required was for Schneider to state that he was a debt collector.[5]  *See* 15 U.S.C.

---

[5]      It is undisputed that the initial contact Schneider had with Douyon was his visit to her workplace in the summer of 2010.  Defs.' Counterstmt. [DE 73-1] ¶ 21.

§ 1692e(11). Schneider did not, however, make such a statement. The Court therefore finds that Plaintiff is entitled to summary judgment on her claim that Schneider's recorded voicemail message violated § 1692e(11). *See Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1187-88 (W.D. Wash. 2011) (granting summary judgment for plaintiff); *Leyse v. Corporate Collection Servs., Inc.*, No. 03-CV-8491, 2006 WL 2708451, at *5-6 (S.D.N.Y. Sept. 18, 2006) (same).

> **2.      *Schneider's Improper Disclosure of Information Concerning Douyon's Debt to Third Parties***

Section 1692c(b) of the FDCPA states that:

> Except as provided in section 1692b of this title [(inapplicable here)], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Plaintiff argues that she is entitled to summary judgment on her claim that Schneider violated this provision by visiting Plaintiff's place of work in June and July of 2010 and discussing the alleged debt in the presence of her co-worker. Pl.'s Mem. [DE 72-19] at 11. To support this claim, Plaintiff refers to the deposition of Schneider, in which he testified that the receptionist at Plaintiff's workplace was present during a conversation between Plaintiff and Schneider concerning Plaintiff's debt. Schneider Tr. at 72.

Plaintiff is not entitled to summary judgment on this claim because she does not assert a violation of § 1692c(b) in her Amended Complaint. The Amended Complaint alleges that by "[c]ommunicating in connection to Ms. Douyon's alleged debt to third parties via phone

13

messages and in-person visits at work and home, without Ms. Douyon's prior consent,"
Schneider violated § 1692c(a)(2) and/or 1692d(6).  However, there is no allegation that
Schneider violated 15 U.S.C. § 1692c(b).  *See* Am. Compl. ¶ 60vii.  Therefore, Plaintiff's motion
is denied.  *See Osborn v. EKPSZ, LLC*, 821 F. Supp. 2d 859, 876 n.6 (S.D. Tex. 2011) (denying
summary judgment on § 1692 claim where Plaintiff did not assert violation of particular
subsection in complaint).

Even if Plaintiff had asserted a violation of § 1692c(b) in the Amended Complaint,
Plaintiff would not be entitled to summary judgment on this claim.  First, although it is
undisputed that Schneider spoke to Plaintiff in front of the receptionist, *see* Defs.' Counterstmt.
[DE 73-1] ¶¶ 21-22, Plaintiff has not demonstrated that the receptionist even heard Schneider's
statements such that Schneider can be found to have "communicated" with the receptionist.
Second, assuming that speaking in front of the receptionist constitutes a communication, there
are issues of fact as to whether Schneider had Plaintiff's consent to do so.  Schneider testified
that Plaintiff said they could talk about the check she received from her insurance company in
front of the receptionist.  *See* Schneider Tr. at 71-72.  Assuming Plaintiff properly asserted this
claim, a jury would need to decide whether or not Plaintiff did indeed give Schneider consent to
discuss her debt in front of the receptionist.   For the foregoing reasons, Plaintiff's motion for
summary judgment on her § 1692c(b) claim is denied.

### 3.    Schneider's Threats in His Voicemail Message

There is no dispute that Schneider left Plaintiff a voicemail message in which he stated he
was "gonna see about coming with the sheriff and have you arrested."  *See* Joint Pre-Trial Stmt.
[DE 60] ¶ 18.  Plaintiff seeks summary judgment on her claim that the message violated

14

§§ 1692e(4) and (5).[6]  Subsection e(4) prohibits:

> The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

15 U.S.C. § 1692e(4).  Similarly, subsection e(5) prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken."  "To determine whether a debt collector violated these subsections, the court must apply a two-pronged test evaluating (1) whether, from the perspective of the least sophisticated debtor, the debt collector threatened legal action or arrest; and (2) whether the debt collector could legally take such action and had the intent to do so."  *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1077 (E.D. Cal. 2008); *accord Stein v. Valentine & Kebartas, Inc.*, No. 10-CV-2465, 2012 WL 1416924, at * 3 (E.D.N.Y. Mar. 15, 2012) *adopted by* 2012 WL 1416901 (E.D.N.Y. Apr. 24, 2012); *Puglisi v. Debt Recovery Solutions, LLC*, 822 F. Supp. 2d 218, 226 (E.D.N.Y. 2011).

There can be no dispute that Schneider's statement to the effect that he was going to have the sheriff arrest Douyon was a threat of arrest.  The issue then becomes whether Schneider could legally take such action and had the intent to do so.  As to whether Schneider could take such action, Defendants argue that "he was lawfully entitled to look into having Plaintiff arrested" based on his belief that she committed larceny by cashing the checks issued to her by her insurance company and not using those funds to pay her NY Medical bill.   Defs.' Mem. [DE 73]

---

[6]     Plaintiff only mentions subsections e(4) and e(5) in the headings of both of her briefs discussing the threats in Schneider's voicemail message.  In her opening memorandum, DE 72-19 at 13, however, she also makes passing reference to subsections e, e(1), e(2)(A), e(7), e(8), and e(10).  Because Plaintiff's legal argument only pertains to sections e(4) and e(5), the Court assumes the reference to the other sections was an error.

at 9.  Plaintiff argues that she could not have been arrested for larceny as a result of this conduct because NY Medical was not the owner of the checks.  Pl's. Reply Mem. [DE 74] at 3-4.  The Court agrees with Plaintiff.  The New York Court of Appeals has held that the failure of an insured to use the proceeds of a policy to pay for costs that a policy was intended to cover cannot serve as a basis for a larceny prosecution.  *See People v. Jennings*, 69 N.Y.2d 103, 127-28, 512 N.Y.S.2d 652, 664-65 (1986).[7]  However, this finding does not necessarily resolve the issue of whether Schneider's actions with respect to initiating Plaintiff's arrest were lawful.  At least one court has approached this inquiry by looking into whether the debt collector's action was

---

[7]     In *Jennings*, the president of the insured (Sentry) received a check from Sentry's insurer to cover payments owed to the Sentry's clients as a result of losses incurred when the Sentry's warehouse was robbed.  69 N.Y.2d at 126.  Sentry reimbursed one of its clients, but retained some of the proceeds, which led to larceny charges.  *Id*. The New York Court of Appeals held:

> Defendant Jennings' failure to use the insurance proceeds to reimburse Sentry's clients for their losses . . . cannot serve as the basis for a larceny prosecution for the simple reason that Sentry, and not the clients, was the rightful owner of the insurance proceeds. It was Sentry that had paid for the insurance coverage, and it was Sentry, rather than its clients, that the insurer was obligated to pay in the event of loss. When the insurer met its obligation by making payment to Sentry in full satisfaction of its claim, the proceeds became Sentry's property to dispose of as it wished. While Sentry may have had a civil obligation to reimburse its clients for their loss, its failure to meet that obligation cannot be transformed into a liability for criminal larceny because nothing belonging to the clients was converted. As we stated in *People v Yannett* (49 NY2d 296, 301), "[a] distinction must be drawn between the refusal to pay a valid debt and the crime of larceny by embezzlement."

*Id*. at 127.  The court also observed that "if the insurer had wanted assurance that the funds would be given directly to the companies that had actually sustained loss, it could have simply issued individual checks jointly payable to them and Sentry."  *Id*. at 128.

permitted under state law. *See Schwarm*, 552 F. Supp. 2d at 1077-79 (evaluating whether merchant was able to make a probable cause determination under California's Bad Check Diversion Act). Following this approach, it would seem that Schneider's actions were lawful since Plaintiff offers no theory as to why it was illegal for Schneider to request that the sheriff arrest Douyon. Other courts, however, focus on whether the threatened criminal prosecution or arrest of the debtor is possible or even likely. *See Lensch*, 795 F. Supp. 2d at 1184-85 (finding that notice which threatened criminal charges unlawful because defendant could not have instituted a criminal proceeding since the statute of limitations had run); *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 917 (W.D. Mich. 2002) (finding that notice which threatened arrest was unlawful because there was only a slight possibility of criminal prosecution); *West v. Costen*, 558 F. Supp. 564, 578 (W.D. Va. 1983) (holding that threat of arrest was lawful because debt collector could be arrested for failing to pay her dishonored checks). Utilizing this approach, Schneider's actions appear to be unlawful because Douyon's failure to pay NY Medical was not larceny. *See Jennings*, 69 N.Y.2d at 127-28. The Court need not decide this issue, however, because Plaintiff is not entitled to summary judgment for a different reason.

Assuming Schneider's action was lawful, Plaintiff will still need to prove that Schneider had no intention of carrying out his threats. *See Tragianese v. Blackmon*, 993 F. Supp. 96, 99-100 (D. Conn. 1997); *Tsenes v. Trans-Continental Credit and Collection Corp.*, 892 F. Supp. 461, 465 (E.D.N.Y. 1995). It is undisputed that Schneider never actually contacted the sheriff. Defs.' Counterstmt. [DE 73-1] ¶ 26. Schneider, however, states in his Affidavit that he "fully intended to see about the possibility of having Plaintiff arrested" and "discussed that option with

David Golyan. . . ."  Schneider Aff. ¶ 3.  In light of this statement, made under oath, the Court

cannot conclude at this time that Schneider had no intention of carrying out his threats.  Thus,

this issue is left to a jury to determine and Plaintiff's motion for summary judgment on her

§ 1692e(4) and (5) claims is denied.

### 4.   *Schneider's Distribution of His Business Card*

On one occasion, Schneider left his business card with Douyon.  Defs.' Counterstmt. [DE

73-1] ¶ 23.  The business card depicts an American flag and bears the title "Financial Crimes

Investigator" under Schneider's name.  *Id.*  Also listed, along with Schneider's phone number

and an email address, is the four-digit code "#5416."  Schlanger Decl., Ex. J.  Plaintiff seeks

summary judgment on her claim that Schneider's distribution of his business card violated 15

U.S.C. §§ 1692e, e(1), e(4), e(7), e(9), e(10) and f.

The Court begins its analysis with the alleged violations of § 1692e(1) and (9).

According to Plaintiff, Schneider violated subsections e(1) and e(9) because his business card

gave the false impression that Schneider was associated with the United States and gave the false

impression that Schneider was primarily a criminal investigator, when he was actually a debt

collector.  Pl's. Mem. [DE 72-19] at 11-13; Pl's. Reply Mem. [DE 74] at 4-5.

Subsection e(1) prohibits:

> The false representation or implication that the debt collector is
> vouched for, bonded by, or affiliated with the United States or any
> State, including the use of any badge, uniform or facsimile thereof.

Subsection e(9) prohibits:

> The use or distribution of any written communication which
> simulates or is falsely represented to be a document authorized,
> issued, or approved by any court, official, or agency of the United

18

> States or any State, or which creates a false impression as to its
> source, authorization, or approval.

Claims under § 1692e are analyzed under the "least sophisticated consumer" standard.

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "The hypothetical least sophisticated

consumer does not have the astuteness of a Philadelphia lawyer or even the sophistication of the

average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon and*

*Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). A lack of sophistication, however, should not

be conflated with unreasonableness, and, as the Second Circuit has observed, "some courts have

held that 'even the least sophisticated consumer can be presumed to possess a rudimentary

amount of information about the world . . . .'" *Id.* (quoting *Greco v. Trauner, Cohen & Thomas,*

*L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005)). Application of the least sophisticated consumer

standard is a matter of law. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993);

*Herzlinger v. Nichter*, No. 09-CV-192, 2011 WL 1434609, at *4 (S.D.N.Y. Feb. 9, 2011) (citing

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003)); *Dorner v. Commercial*

*Trade Bureau of California*, No. 08-CV-83, 2008 WL 1704137, at *5 (E.D. Cal. April 10, 2008).

First, Plaintiff's motion is denied with respect to the allegation that Schneider's business

card gave the false impression that Schneider was a criminal investigator because, as discussed

below, there are genuine issues of fact whether Schneider was a criminal investigator.

Turning to whether the business card falsely suggested a government affiliation,

Defendant argues that even the least sophisticated consumer would not interpret the business card

as suggesting that Schneider was affiliated with the government. Defs.' Mem. [DE 73] at 7-8.

By way of example, in *Osborn*, 821 F. Supp. 2d at 876-77, the court dismissed a claim that was

19

based on (1) the use of an address block similar to that associated with certain Texas courts, (2) the use of a letterhead similar to that used by a judge, (3) the use of a bar code that resembled a court document, and (4) the name "Texas Final Judgments, LLC," finding that even the least sophisticated consumer would understand that the defendant was not a Texas court.  Similarly, in *Kahen-Kashani v. Nat'l Action Fin. Servs., Inc.*, No. 03-CV-828, 2004 WL 1040384, at *6 (W.D.N.Y. Apr. 12, 2004), the court dismissed claims stemming from the use of the word "National" in defendant's name "National Action Financial Services, Inc." where no other references or symbols of the national government were used.  *See also Kuehn v. Cadle Co., Inc.*, No. 04-CV-432, 2007 WL 1064306, at *5 (M.D. Fl. April 6, 2007) (holding that letter did not falsely imply that it was authorized by the IRS even though the IRS was mentioned where the letter did not look like a government document); *DeSantis v. Roz-ber, Inc.*, 51 F. Supp. 2d 244, 246-47 (E.D.N.Y. 1999) (holding that debtor could not find that the use of the name "New Jersey Credit Collection Agency" was affiliated with a government entity); *Pettit v. Retrieval Masters Creditors Bureau*, 42 F. Supp. 2d 797, 807 (N.D. Ill. 1999) (holding that use of word "national" does not suggest affiliation with the United States government).

Like the documents in those cited cases, it would be unreasonable to interpret Schneider's business card as indicating any governmental affiliation.   Even the hypothetical least sophisticated consumer would not conclude that the appearance of an American flag and the use of the words "Financial Crimes Investigator" directly under Schneider's name was the reflection of Schneider's affiliation with a governmental entity.  Notably, the card does not list any government agency or entity at all.  Further, it is not reasonable to assume that a financial crimes investigator automatically works for the government.

20

Schneider's business card differs materially from the types of representations the courts have found to violate the FDCPA.  For example, in *Adams v. First Fed. Credit Control, Inc.*, No. 91-CV-2467, 1992 WL 131121, at *2 (N.D. Ohio May 21, 1992), the court granted plaintiff's motion for summary judgment, holding that the use of the word "federal" on defendant's letterhead, sandwiched between two icons which were similar to the seal of the United States, gave the consumer the impression that defendant was affiliated with the federal government.  In *Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174 (S.D.N.Y. 2011), the court granted summary judgment for plaintiff where defendant sent plaintiff a "Pre-Suit Package" which included a summons and complaint bearing a caption that referenced the District Court of the County of Nassau, First District.  *See also Gammon v. GC Servs. Ltd P'ship*, 27 F.3d 1254, 1257-58 (7th Cir. 1994) (reversing dismissal of claim based on statement that defendant "provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes").  Indeed, some courts have held that the application of §1692e(9) is limited to "egregious situations," unlike the one presented here, "where the debt collector overtly impersonates a government agency or where it attempts to hide its identity by using a false alias."  *Sullivan v. Credit Control Servs., Inc.*, 745 F. Supp. 2d 2, 10 (D. Mass. 2010) (dismissing claim based on use of name "Government Employees Insurance Company" instead of GEICO); *accord Dorner*, 2008 WL 1704137, at *3.  Unlike these cases, Schneider's business card does not give the impression that he is affiliated with the United States government and the Plaintiff is not entitled to summary judgment on her § 1692e(1) and (9) claims.

The Court next turns to Plaintiff's claim that Schneider violated subsections e, e(4), e(7), e(10) and f because Schneider's business card gave the false impression that he is "primarily a criminal investigator" when he is actually a debt collector.  Pl's. Mem. [DE 72-19] at 12; Pl's. Reply Mem. [DE 74] at 4-5.

Subsection e contains a general prohibition against the use of "false, deceptive, or misleading characterizations."  Similarly, subsection e(10) bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  A representation is deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."  *Clomon*, 988 F.2d at 1319; *Kahen-Kashani*, 2004 WL 1040384, at *3 (granting summary judgment for defendant where plaintiff did not prove statements were inaccurate); *Sullivan*, 745 F. Supp. 2d at 11 (dismissing claim where statement was not objectively false).  Here, Plaintiff has not unequivocally established that Schneider's card contained any false representations.  First, the Court does not share Plaintiff's view that the card gave the impression that Schneider was <u>primarily</u> a criminal investigator.  In fact, the card gives no indication as to what Schneider's primary job was but rather simply states what appears to be a job title.  As to whether or not Schneider was indeed a criminal investigator, the Court finds genuine issues of material fact.  While Schneider testified that he was not trained or licensed as a financial crimes investigator, *see* Schneider Tr. at 24-25, this testimony does not necessarily compel the conclusion that Schneider was not providing the services performed by a financial crimes investigator.  Plaintiff did not submit deposition testimony or any other admissions of Schneider stating that he was not a financial crimes investigator, nor is this fact mentioned in Plaintiff's Rule 56.1 Statement.  Moreover, Schneider's

22

testimony that he "works with" a "private investigator" on occasion raises the possibility that his work included more than debt collection and could have included criminal investigation.  *See id*. at 62.  While it is difficult to prove a negative, Plaintiff has not provided the Court with any basis to conclude definitively that the "Financial Crimes Investigator" title was false.  Since this issue remains an open question of fact, Plaintiff is not entitled to summary judgment on her § 1692e and § 1692e(10) claims.

Plaintiff's motion with respect to her § 1692e(4) and e(7) claims is also denied.  As discussed above, § 1692e(4) prohibits a debt collector from implying that nonpayment of a debt will result in arrest or imprisonment unless such action is lawful and the debt collector intended to take such action.  Subsection e(7) prohibits the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."  Summary judgment on the subsection e(4) claim is precluded because, as noted previously, there are material issues of fact whether Schneider intended to take action with respect to having the Plaintiff arrested.  As to the subsection e(7) claim, summary judgment is precluded because there is no evidence showing Schneider acted "in order to disgrace" Douyon.  *See Oscar v. Prof'l Claims Bureau, Inc.*, No. 11-CV-5319, 2012 WL 2367128, at *4 (E.D.N.Y. June 1, 2012).

Finally, Plaintiff is not entitled to summary judgment on her subsection f claim.  Subsection f prohibits a debt collector from employing "unfair or unconscionable means to collect" a debt.  Subsections f(1) through f(8) enumerate specific prohibited conduct.  Although a violation of subsection f is not limited to the specific prohibited conduct, if a plaintiff is not alleging that the defendant committed one of the specific prohibited acts, the claim must be based on conduct that is distinct from any other FDCPA violation alleged in the complaint.  *See Oscar*,

2012 WL 2367128, at *5; *Basile v. I.C. Sys., Inc.*, No. 08-CV-42, 2011 WL 4368510, at *2 (W.D.N.Y. Sept. 19, 2011); *Suquilandia v. Cohen & Slamowitz, LLP*, No. 10-CV-5868, 2011 WL 4344044, at *9 (S.D.N.Y. Sept. 8, 2011); *Osborn*, 821 F. Supp. 2d at 878; *Foti*, 424 F. Supp. 2d at 667.  Here, Plaintiff's subsection f claim is based on the same conduct supporting his claims under subsection e, e(4), e(7), and e(10).  Therefore, the claim under subsection f fails and Plaintiff's motion for summary judgment on this issue must be denied.

To summarize, the status of Plaintiff's FDCPA claims is as follows:  Plaintiff is entitled to summary judgment on her claim that Schneider violated 15 U.S.C. §§ 1692g and 1692e(11) (with respect to Schneider's recorded voicemail); summary judgment is denied with respect to Plaintiff's claims that Schneider violated 15 U.S.C. §§ 1692c(b), 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11) (with respect to Schneider's business card and documents left at Plaintiff's workplace), and 1692f.  Although some of the claims are deficient as a matter of law, i.e., the §§ 1692e(1), e(9) and f claims, the Court will not dismiss them at this time.  Defendants did not move for summary judgment on these claims and the Second Circuit has cautioned that a *sua sponte* grant of summary judgment without notice, while permitted, is strongly discouraged.  *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000).

**B.**     **The NYGBL § 349 Claims**

Section 349 of the New York General Business law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  To establish liability under this statute "(1) the defendants' acts or practices must have been directed at consumers, (2) the acts or practices must

24

have been misleading in a material way, and (3) the plaintiff must have sustained injury as a

result." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 74 (E.D.N.Y. 2010).  The

Amended Complaint asserts several violations of § 349.  As to Defendant Schneider, Plaintiff

claims that, in addition to other unspecified conduct, all of Schneider's purported FDCPA

violations are also violations of § 349.  Am. Compl. ¶¶ 64, 67.  Plaintiff further alleges that

Schneider's violations of the FDCPA serve as a basis for imposing liability against the other

Defendants under § 349.  *Id*. ¶¶ 65-66.  Finally, Plaintiff maintains that Defendants'

misrepresentations regarding their entitlement to interest payments set forth in two letters sent by

David Golyan violated § 349.  *Id*. ¶ 67.  Defendants move for summary judgment on all of these

claims.  Plaintiff moves for summary judgment on the claim based on alleged misrepresentations

concerning interest owed by Plaintiff.

### 1.    *Plaintiff's Motion*

Plaintiff moves for summary judgment on her NY GBL § 349 claims based on letters

mailed by Defendants on January 19, 2010 and March 15, 2010.  *See* Pl.'s Mem. [DE 72-19] at

14-17.  These letters stated:

> ** Please Note: if we do not receive the check(s) by [date].  We have
> no other choice to place your account in our legal department which
> will result in a 10% percent interest every 30 days on the full amount
> of the balance due with Interest Accumulated added to the principal
> amount due**

*See* Schlanger Decl., Ex. H; Defs.' Counterstmt. [DE 73-1] ¶ 8.  In opposition, Defendants argue

that these claims fail because Plaintiff never actually received the letters.  *See* Defs' Mem. [DE

73] at 5-6.  Plaintiff does not dispute the fact that she never actually received the letters.  Indeed,

in her Rule 56.1 Statement submitted in Opposition to Defendants' Motion for Summary

Judgment, Plaintiff stated: "It is uncontested that Plaintiff denied receiving the letters dated January 19, 2010 and March 15, 2010." Pls.' Counterstmt. [DE 69] ¶ 12. If Plaintiff did not receive the letters, it follows that she could not have been injured by them. *Gale v. Int'l. Bus. Machs. Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (2d Dep't 2004) (dismissing claim where buyer did not allege that she saw the misleading statements prior to purchase). Therefore, Plaintiff's motion for summary judgment with respect to Defendants' letters is denied because she has not satisfied the injury element of the claim.

On reply, Plaintiff argues – for the first time – that she is entitled to summary judgment based on verbal representations made by David Golyan similar to the statements made in the letters. Pl's. Reply Mem. [DE 74] at 7 ("David Golyan repeated these fraudulent misrepresentations while discussing a repayment plan with Plaintiff over the phone in Summer 2010.") Because Plaintiff raised this theory for the first time in her reply, the Court will not consider it. *See Mullins v. City of New York*, 653 F.3d 104, 118 n.2 (2d Cir. 2011) (declining to consider argument raised for the first time in a reply brief) (citing *Castro v. Holder*, 597 F.3d 93, 95-96 n.2 (2d Cir. 2010)).

### 2. *Defendants' Motion*

Defendants first argue that all of the NY GBL § 349 claims should be dismissed because Plaintiff has not demonstrated actual harm. In order to succeed on a § 349 claim, a plaintiff must demonstrate that he or she was injured by the deceptive or misleading act. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615 (1999). The harm does not necessarily need to be pecuniary harm. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529 (1995).

26

Plaintiff alleges that she suffered actual harm as a result of the alleged § 349 violations, including but not limited to the harms referenced in ¶ 58 of the Amended Complaint.  Am. Compl. ¶ 69.  Paragraph 58 of the Amended Complaint states that Defendants' conduct caused Plaintiff to lose income as a result of time taken off from work and also caused the following harm:  intense fear, including fear for her physical safety, stress, aggravation, loss of sleep, loss of appetite, crying, anxiety, nervousness, emotional distress, fear, worry and loss of happiness, loss of concentration, irritability, embarrassment, humiliation, intimidation, loss of tranquility, indignation, and pain and suffering.  Defendants argue that "Plaintiff's evidence is only of non-severe emotional harm that by itself . . . is not compensable under either intentional or negligent tort theories [and] Plaintiff essentially seeks to use GBL § 349 to seek redress for harm to an interest that is not protected by the law."  Defs.' Mem. [DE 68-1] at 12.

Contrary to Defendants' argument, emotional harm does satisfy the injury requirement for a claim under NY GBL § 349.[8]  *See Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (finding that plaintiff sufficiently alleged injury prong of test under § 349 where she claimed defendant's actions caused her humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment); *Wood v. Capital One Servs., LLC*, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010) (same).  Notably, Defendants cite no authority for the statement that emotional harm is insufficient.  While Plaintiff will need to prove that she actually suffered the alleged emotional harm at trial, the fact that she alleges only emotional harm is not grounds for dismissing the claims.

---

[8]    As discussed below, Plaintiff's claim for lost wages is actually part of her emotional distress claim since she claims she missed work due to her emotional distress.

Defendants also argue that Plaintiff's claims based on false assertions of entitlement to interest should be dismissed because Plaintiff cannot demonstrate she was injured by these alleged acts. As set forth above, it is undisputed that Plaintiff did not receive the January 19, 2010 and March 15, 2010 letters containing the allegedly false assertions. Therefore, Plaintiff could not have been injured by any statements made in these letters and the claim is dismissed to the extent it is based on the letters. In an attempt to save her claim, Plaintiff references *Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1449-50, in which the court granted summary judgment for the plaintiff on a claim that the defendant failed to provide notices required by FDCPA §§ 1692g(a)(4) and (5) despite the fact that the plaintiff never received the letters at issue. Unlike NY GBL § 349, FDCPA § 1692g is a strict liability statute and there is no requirement that a plaintiff bringing a claim under that statute suffer harm or injury, *see Russell*, 74 F.3d at 33-34. For this reason, *Kuhn* is distinguishable and Plaintiff's NY GBL § 349 claims based on the January 19, 2010 and March 15, 2010 letters are dismissed.

For the sake of clarity, the Court emphasizes that the claim based on verbal false assertions of entitlement to interest may go forward. In arguing for dismissal of this claim, Defendants maintain that Plaintiff's "testimony makes it clear that her damages resulted from humiliation and fear resulting from her encounters with Mr. Schneider and the unanswered phone calls from NY Medical, and not from assertions of some extra money owed as interest." Defs.' Mem. [DE 68-1] at 14. Defendants do not point to any evidence supporting this statement and the record does not establish that Plaintiff's emotional distress was caused solely by the factors Defendants state.

Defendants also argue in their reply brief that the claim based on verbal assertions should

be dismissed because the amount sought was lawful.  Defs.' Reply Mem. [DE 71] at 6.  The

Court need not address this argument because it was raised for the first time on reply.  *See*

*Mullins*, 653 F.3d at 118 n.2.  Moreover, the Court notes that, while Defendants' argument is

somewhat difficult to decipher, it appears that they are arguing that the assertions were lawful

because the parties *could have* legally agreed to the amount of interest Defendants sought.  This

does not answer the question whether the parties actually did agree to this amount.  Absent such

an agreement, Defendants' assertions may have been false and therefore could support a NY

GBL § 349 claim.  *See Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-CV-3920, 2012 WL

661456, at *13-14 (E.D.N.Y. Feb. 28, 2012) (recommending denial of motion to dismiss

plaintiff's claim based on defendant's attempts to collect time-barred debt).

      Defendants next argue that certain of the other acts alleged in the Amended Complaint

were not materially misleading.  Defs.' Mem. [DE 68-1] at 12-14.  Specifically, Defendants

argue that Schneiders' alleged impersonation of law enforcement through the use of a "gold shine

'security' type badge" and "Financial Crimes Investigator" business card would not mislead a

reasonable consumer.  Defendants also argue that NY Medical employee Nathan Kaimov's

description of Schneider as an "inspector" was not misleading to a reasonable consumer.

Deceptive acts under NY GBL § 349 are defined as those acts "that are 'likely to mislead a

reasonable consumer acting reasonably under the circumstances.'"  *Horowitz v. Stryker Corp.*,

613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (quoting *Oswego*, 85 N.Y.2d at 26).  "A deceptive

practice, however, need not reach the level of common-law fraud to be actionable under section

349."  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000).

      Material issues of fact preclude summary judgment on these claims.  Based on the current

record, the Court cannot conclude that a reasonable consumer would not be misled into believing Schneider was associated with law enforcement based on the badge he allegedly displayed.  The record is not clear as to the type of badge and the circumstances under which it was displayed, factors which would affect the determination of whether the representation was misleading.  As to the business card, as discussed *supra* at pages 21-23, there are material issues of fact to be determined whether the "Financial Crimes Investigator" deceptively gave the impression that Schneider was a criminal investigator.  Finally, there are also material issues of fact as to whether Nathan Khaimov informed Plaintiff that he was sending an inspector to her residence and whether such action was deceptive.  In their Rule 56.1 Statement [DE 68-2], Defendants state that:

> Plaintiff alleges that earlier that day Nathan Khaimov had informed Plaintiff over the phone "that he was sending an 'inspector' to her personal residence to 'pick up'" the amounts sought by NY Medical.

¶ 14.  In Plaintiff's Counterstatement, she agrees that the Complaint contains this allegation and notes that Defendants denied it in their Answer.  Pl's. Counterstmt. [DE 69] ¶ 15.  A 56.1 Statement should contain statements of fact supported by evidence, *see* Local Civ. R. 56.1(a),(d), not a recitation of the allegations in the pleadings.  Because Defendants failed to comply with this rule, there is no basis for the Court to determine whether Khaimov made the alleged statement.  Moreover, the record is silent on whether or not Schneider is an "inspector" – a fact that is necessary to make a determination whether Khaimov's statement was misleading.

Defendants also argue that the GBL § 349 claims against NY Medical should be dismissed to the extent that they are predicated on Schneiders' agency relationship with NY Medical.  As discussed below, there are material issues of fact regarding whether NY Medical

can be held vicariously liable for Schneider's acts.  *See* Section III.E., *infra*.

For the forgoing reasons, Defendant's motion for summary judgment on Plaintiff's NY GBL § 349 claim is denied, with one exception:  the motion is granted with respect to Plaintiff's claim based on the allegedly false assertions set forth in the January 19, 2010 and March 15, 2010 letters and that claim is dismissed.

### C.    Intentional Infliction of Emotional Distress Claim

New York law applies to Plaintiff's tort claims because that is the state where the alleged tortious activity occurred.  *See Luizzi v. Pro Transp. Inc.*, No. 02-CV-5388, 2009 WL 252076, at *4 (E.D.N.Y. Feb. 2, 2009).  In order to establish a claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  *D'angeloFenton v. Town of Carmel*, 470 F. Supp. 2d 387, 399 (S.D.N.Y.2007) (quoting *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993)).  New York states's highest court has made clear that the "requirements of the rule are rigorous, and difficult to satisfy."  *Howell*, 81 N.Y.2d at 122.  The fourth element, severe emotional distress, must be supported by medical evidence.  *See Biberaj v. Pritchard Indus., Inc.*, – F. Supp. 2d – , 2012 WL 892184, at *13 (S.D.N.Y. March 12, 2012) (collecting cases).

Defendants argue that Plaintiff's claim should be dismissed because the record is devoid of medical evidence to support her IIED claim.  Defs.' Mem. [DE 68-1] at 9-10.  Plaintiff did not respond to this argument in her opposition.  On reply, Defendants state that "Plaintiff withdrew her claim" in her memorandum of law.  Defs.' Reply Mem. [DE 71] at 2.  Although Plaintiff's

reply memorandum does not contain an affirmative statement that she is withdrawing this claim, she does appear to concede that she cannot satisfy the elements of an intentional inflection of emotional distress cause of action. In arguing that her other claims survive summary judgment, she states:

> Defendants' citation to cases pointing specifically to a lack of medical evidence regarding emotional harm is unpersuasive. Both cases . . . address claims for intentional infliction of emotional distress. Unlike other types of claims, IIED claims are subject to extraordinarily strict limitations, including the requirement that the emotional distress be "severe."

Pl's. Opp. Mem. [DE 70] at 14. Plaintiff does not dispute that medical evidence is required, nor does she argue that she can provide medical evidence to support her claim. Indeed, in her Rule 56.1 Counterstatement, she states the following regarding her emotional distress: "It is uncontested that Plaintiff did not see a doctor, but rather, self-medicated for sleeplessness with over the counter medication." Pl's. 56.1 Counterstmt. [DE 69] ¶ 21. Plaintiff also concedes that she did not see any doctor other than her cardiologist Dr. Jeffrey Snow and that Dr. Snow's records do "not note any complaint by Ms. Douyon of anxiety, aggravation, stress, or pain . . . ." *Id*. ¶¶ 23, 25-26.[9] Because Plaintiff cannot support her claim with medical evidence and because she appears to have abandoned the claim, Defendants' motion for summary judgment is granted with respect to Plaintiff's claim for intentional inflection of emotional distress and that claim is dismissed.

---

[9]     In Plaintiff's Rule 56.1 Counterstatement, she states that "Dr. Snow also testified that he had no independent recollection of Ms. Douyon's visits or what they discussed . . . and that it is possible that, as Ms. Douyon claims, her complaints were discussed but are not reflected in his records." Pl's. Counterstmt. [DE 69] ¶ 25. The fact that Dr. Snow testified to the possibility that a conversation occurred that he no longer recollects is not medical evidence of Plaintiff's emotional harm.

###### D.       Negligence Claims

Defendants seek summary judgment on Plaintiff's negligence claim (Sixth Cause of

Action) and negligent hiring, retention, training, and supervision claims (Fifth Cause of Action)

on the grounds that Plaintiff does not have a viable damages theory.   According to the pleadings,

Plaintiff's negligence claim is based on Defendants' "overly aggressive and unlawful collection

activities" including:

> repeatedly and falsely threatening to have [Plaintiff] arrested,
> impersonation of law enforcement, threatening to send an "inspector"
> to her home, Mr. Schneider's reaching into his coat as if reaching for
> a firearm, placement of excessive and abusive phone calls to her place
> of work, verbally berating her at work and home, calling her
> excessively at work, [and] demanding 120% annual interest on the
> alleged debt.

Am. Compl. ¶ 109.  Plaintiff claims that as a result of Defendants' negligence, she suffered lost

income due to missed days from work.  *Id*. ¶¶ 58, 102, 110.   She also claims she suffered a wide

variety of emotional damages.   *Id*.

"A breach of the duty of care resulting directly in emotional harm is compensable even

though no physical injury occurred when the mental injury is a direct, rather than a consequential,

result of the breach and when the claim possesses some guarantee of genuineness."  *Ornstein v.

New York City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 852 N.Y.S.2d 1 (2008) (internal

quotations omitted); *accord Carter v. United States*, 760 F. Supp. 2d 281, 282 (E.D.N.Y. 2011);

*Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 506, 462 N.Y.S.2d 42 (1983).  A plaintiff can

demonstrate a guarantee of genuineness where he or she was "subjected to fear of physical injury

as a direct result of the tortious conduct."  *See Vumbaca v. Terminal One Group Ass'n L.P.*, – F.

Supp. 2d –, 2012 WL 1377074, at *25 (E.D.N.Y. April 20, 2012) (citing *Howard v. Lecher*, 42

33

N.Y.2d 109, 397 N.Y.S.2d 363 (1977)).  In the absence of fear of injury, the guarantee of genuineness can be provided "by the shocking or severe nature of the claim itself" or psychiatric testimony.  *Id*.  If a plaintiff is relying on psychiatric testimony, he or she must present more than "a plaintiff's uncorroborated testimony of upsetness."  *Id*. at *26.

Plaintiff's claim is not so shocking or severe as to prove a guarantee of genuineness.  The types of cases that meet this standard involve far more serious conduct, such as the death of a family member or a life-threatening disease.  *See id.* at *25 (collecting cases).  Moreover, as discussed above, Plaintiff cannot support her claim of emotional distress with medical evidence, *see* p.32, *supra*.  Thus, the only way for the claim to survive is if Plaintiff was subjected to fear of physical injury as a result of the tortious conduct.

The Amended Complaint contains the following allegations regarding Schneider's visit to Plaintiff's workplace:

> Ms. Douyon came down to the reception area, explained to Donna [(the receptionist)] that Mr. Schneider was an intruder, and told her to call the police.  Mr. Schneider then attempted to give his business card to Donna.  While opening his wallet ostensibly to retrieve a business card, Mr. Schneider instead revealed a gold shine "security" type badge that he showed to Ms. Douyon. . . . When Mr. Schneider reached back into his jacket a second time, he did so in such a matter [sic] that Ms. Douyon reasonably believed that he would pull out a gun or pull back his jacket to show them a gun, causing Ms. Douyon acute fear, anxiety and emotional anguish.

Am. Compl. ¶¶ 50-51.  Plaintiff testified to these events in her deposition.  Douyon Tr. at 202-203.[10]  According to Plaintiff, she did not go to work the day after the incident because she was

---

[10]    Excerpts from the transcript of the deposition of Plaintiff ("Douyon Tr.") are attached as Exhibit F to the Schlanger Declaration [DE 72-2],  Exhibit E to the Schlanger's Opposition Declaration [DE 69-1], and Exhibits I-J to Defendants' Rule 56.1 Statement [DE 68-2].

anxious and feared Schneider would return with a gun.  *Id.* at 194, 221, 234.  She also testified to

her belief that Dr. Golyan "sent people to kill [her]" and "to harm [her]," *id.* at 23-24, and

described her fears as follows:

> [W]hen I'm driving if in fact somebody is tailgating me I'm kind of
> concerned [because Schneider] left a message he knows how to
> handle people like me.  *Id.* at 198.
>
> I'm afraid to take the elevator.  I'm afraid to do anything.  I was just
> afraid.  *Id.* at 200.
>
> I feel as if I was being threatened, that somebody would come and
> shoot me one day, maybe tomorrow.  The way that he expressed
> himself that he knows, he knows how to handle people like me.  He's
> used to that and he's always come out a winner.  *Id.* at 202.
>
> I couldn't sleep, I was anxious, I was jumping from any noise that I
> hear.  And then again, when the door, the back door, when I go to
> start my car, I don't know where the man is and I'm afraid to go to
> work.  *Id.* at 215-216.

Based on this testimony, there are triable issues of fact regarding whether Plaintiff was in fear of

her physical safety.  Thus, Plaintiff's claim can go forward, but only to the extent that it is

premised on Schneider's allegedly threatening visit to Plaintiff's workplace.  None of the other

acts alleged, e.g. phone calls, demanding more interest than Plaintiff actually owed, etc., satisfy

the guarantee of genuineness required for a negligence claim seeking emotional distress damages.

Plaintiff will still need to prove at trial that her fear was genuine.  However, the Court cannot say

that no trier of fact could conclude that she experienced a fear of physical injury.  The Court

notes that some of Plaintiff's distress seems to have been caused by her humiliation as opposed

to fear of physical injury, *see id.* at 200, 243; however, causation is also an issue for trial and

credibility determinations are left to a jury.

Although Plaintiff's claim may forward to the extent that it is based on Schneider's threats, the Court rejects Plaintiff's attempts to circumvent the requirement of a guarantee of genuineness by claiming lost wages. Pls.' Opp. Mem. [DE 70] at 9-10.[11]  First, the guarantee of genuineness requirements apply whenever there is no physical impact; thus, the fact that Plaintiff is claiming lost wages is irrelevant. *See Vumbaca*, 2012 WL 1377074, at *25.  Second, the Court agrees with Defendant that the claim for lost wages is part of Plaintiff's emotional distress claim in that the lost wages are a consequence of her emotional harm, not a separate injury. *See id*., 2012 WL 1377074, at *22 (treating physical manifestations of emotional distress such as headache, nausea, disgust, and hunger as emotional distress injuries); *Casale v. Unipunch, Inc.*, 177 A.D.2d 1029, 1030, 578 N.Y.S.2d 46, 47 (4th Dep't 1991) (dismissing claim for pecuniary

---

[11]      The Court also notes that it is unpersuaded by the case law cited by Plaintiff in favor of a more lenient standard.  For example, Plaintiff relies on *In re Baker*, 18 B.R. 243, 245 (W.D.N.Y. Bkr. 1982) in which the court held that "when the emotional distress alleged to have been suffered is the sort that would be experienced by reasonable people under the circumstances, some damage, even if merely nominal damage, can be presumed."  That case, however, involved a claim for intentional infliction of emotional distress and is therefore inapplicable to Plaintiff's negligence claim.  As an aside, the case does not state the proper intentional infliction of emotional distress standard, *see* p. 31, *supra*.  Plaintiff also relies on *Salandy v. Bryk*, 55 A.D.3d 147, 864 N.Y.S.2d 46, (2d Dep't 2008).  In that case, plaintiff sued physicians and a hospital after she was administered a blood transfusion to which she did not consent based on her religious beliefs.  *Id*. at 154-55. The court held that there was sufficient evidence of a guarantee of genuineness because the plaintiff had expressed her religious opposition to the transfusion prior to the procedure.  *Id*.  As the dissent pointed out, this conclusion is contrary to the body of decisional law which only allows emotional distress damages in certain established categories, such as where the plaintiff was caused to fear for her physical safety.  *Id*. at 166-67.  Even if *Salandy* remains good law, Plaintiff here has not demonstrated any sort of guarantee of genuineness akin to that in *Salandy*.  Finally, *Birnbaum v. U.S.*, 436 F. Supp. 967 (2d Cir. 1978) involved claims for invasion of privacy under the Federal Tort Claims Act, not a negligence claim.

damages that were merely a consequence of emotional distress).[12]

Plaintiff's claim for negligent hiring, retention, training, and supervision may also go forward.  Although Plaintiff asserts her negligence claims against NY Medical and Dr. Golyan, the only viable negligence claim is based on Schneider's acts.  Absent proof of an agency relationship with Schneider, Plaintiff may still hold NY Medical and Dr. Golyan liable for Schneider's acts under a theory of negligent hiring/supervision.  *See Colorado Capital*, 227 F.R.D. at 188 (holding that a creditor may be held liable for the negligence of a debt collector it hires, assuming all the other elements of a negligence claim are satisfied); *Becker v. Poling Transp. Corp.*, 356 F.3d 381, 389 (2d Cir. 2004) (stating exception to rule that party is not liable for acts of independent contractor where party was negligent in selecting, instructing, or supervising contractor).  The only argument Defendants have put forward for dismissing the negligent hiring/supervision claim is that Plaintiff's emotional distress claim is deficient.  As explained, there are issues of fact with respect to whether the Plaintiff was placed in fear of physical injury such that she would be entitled to pursue emotional distress damages.

Based on the foregoing,  Plaintiff's negligence and negligent hiring/supervision claims will proceed to trial, but only to the extent that they are based on Schneider's visit to Plaintiff's office which allegedly caused her to fear for her physical safety.

---

[12]    Notably, if the lost wages were a separate claim, they would be barred by the economic loss doctrine which bars recovery on a negligence claim for purely economic losses.  *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) (dismissing claim where plaintiff did not allege personal injury or property damage, but only economic losses); *Dooner v. Keefe Bruyette & Woods, Inc.*, 157 F. Supp. 2d 265, 285-86 (S.D.N.Y. 2001).

### E.      NY Medical's Liability for Schneider's Misconduct

Defendant argues that Plaintiffs' NY GBL § 349, intentional infliction of emotional

distress,[13] and slander claims should be dismissed as against NY Medical to the extent that they

depend on the existence of an agency relationship between NY Medical and Schneider because

Schneider was an independent contractor, not an agent.  Defs.' Mem. [DE 68-1] at 14-16.[14]  In

opposition, Plaintiff argues that Schneider was an agent of NY Medical (and the Golyan

brothers) and also argues that NY Medical can be liable under a theory of apparent authority.

Pl.'s. Opp. Mem. [DE 70] at 18-20.  Defendants do not discuss the apparent authority argument in

their reply.

Under New York law, a principal may be held liable for the torts of its agent committed

within the scope of the agency.  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012).  A

principal may held liable for its agent's violations of NY GBL § 349.  *See People v. Gen.*

*Electric Co., Inc.*, 302 A.D.2d 314, 317, 756 N.Y.S.2d 520 (1st Dep't 2003).  "Under New York

law, an agency relationship 'results from a manifestation of consent by one person to another that

the other shall act on his behalf and subject to his control, and the consent by the other to act.'"

*Steinbeck v. Steinbeck Heritage Found.*, 400 F. App'x 572, 575 (2d Cir. 2010) (quoting *New*

*York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001)).  The key

inquiry in determining the existence of an agency relationship is whether the principal exercised

control over the agent with respect to the matters entrusted to the agent.  *See id.*; *Bodur v.*

---

[13]      This claim has been dismissed for the reasons set forth in Section III.C., *supra*.

[14]      On reply, Defendants attempt to broaden this argument to include all of Plaintiff's state
law causes of action and all Defendants.  Defs.' Reply Mem. [DE 71] at 8.  The Court will only
address the arguments raised in Defendants' opening brief.  *See Mullins*, 653 F.3d at 118 n.2.

*Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011); *Herzlinger v. Nichter*, 09-CV-192, 2011 WL 1434609, at * 9 (S.D.N.Y. Feb. 9, 2011); *Race v. Goldstar Jewellery, LLC*, 84 A.D.3d 1342, 1342-43, 924 N.Y.S.2d 166 (2d Dep't 2011).

It is undisputed that Schneider was employed by NY Medical as a debt collector on multiple occasions and was assigned the task of collecting Douyon's debt, *see* Pl's. Counterstmt. [DE 69] ¶ 6, and that NY Medical would compensate Schneider by paying him a percentage of the funds he collected from debtors, *see id*.; Defs.' Counterstatement [DE 73-1] ¶¶ 17, 20.  The parties do not agree, however, on the degree of control that NY Medical exercised over Schneider.  Plaintiff claims that there is "extensive evidence" that NY Medical exerted significant control over Defendant Schneider.  Pl's Opp. Mem. [DE 70] at 20.  Defendants, on the other hand, argue that NY Medical did not exercise sufficient control over Schneider so as to create liability.  *See* Defs.' Mem. [DE 68-1] at 16.

Plaintiff has provided the Court with Schneider's testimony regarding the nature of his relationship with NY Medical.  Schneider testified that all of his interactions with NY Medical were through David Golyan.  Schneider Tr. at 70.  He further stated that David Golyan asked him to pick up some checks from Douyon's home and that David Golyan gave him Douyon's file.  *Id*. at 73.  According to Schneider, David Golyan also told him to go speak to Douyon about a check and gave Golyan Douyon's address, the amount she owed NY Medical, and the location where she worked.  *Id*. at 74.[15]  Schneider testified as follows regarding one of his attempts to collect

---

[15]    Plaintiff also cites pages 76:15-79:9 of the David Golyan transcript to support the statement that David Golyan directed the amount of time Schneider spent surveilling Douyon, *see* Pl's. Opp. Mem. [DE 70] at 20.  However, Plaintiff did not provide the Court with those portions of David Golyan's transcript and the Court therefore is unable to evaluate the accuracy of this statement.

NY Medical's debt from Plaintiff:

> Q:    So Mr. Golyan told you to go pick up a check, and she
>       [plaintiff] didn't meet you?
>
> A:    He called me and asked me if I could go to her house at 3:00,
>       and she has six checks and she'll be there at 3:00.

*Id*. at 77.  Schneider visited Douyon's home as instructed at 3:00 and was told by a male who

answered the door that Douyon was not there.  *Id*.  As to what happened next, Schneider stated:

> A:    I went back to the car.  I called David Golyan.  I said "David,
>       I can't stay here any longer.  It's a hundred degrees in the car,
>       and I'm going to leave."  And he says, "Okay."  I waited
>       maybe another 15, 20 minutes and left.
>
> Q:    So then you informed David Golyan that it was a bust, I
>       imagine?
>
> A:    Yeah, yeah.
>
> Q:    And then he instructed you to go –
>
> A:    He said –
>
> Q:    – to her place of employment again?
>
> A:    Which I went again.  The same place, there in Manhasset.
>       . . .
>
> Q:    My question was whether or not David Golyan asked you to
>       go back to her place of employment?
>
> A:    Yes.
>
> Q:    And did you?
>
> A:    I did.

*Id.* at 78-79.[16]

Based on Schneider's testimony, the Court concludes that there are triable issues of fact whether NY Medical exercised sufficient control over Schneider such that an agency relationship existed.  On at least one occasion – the visit to Plaintiff's home described above – it appears that Schneider was taking orders from David Golyan and was not acting independently.  *C.f. Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) (granting summary judgment for defendant where plaintiff failed to produce evidence that creditor had control over debt collector); *Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 448-49 (E.D.N.Y. 2011) (holding that debt collector was not agent of wireless providers where providers did not exercise control over debt collector's daily operations); *Util. Metal Research, Inc. v. Coleman*, No. 03-CV-1463, 2008 WL 850456, at *10 (E.D.N.Y. Mar. 28, 2008) (holding that debt collector was not agent of company where there was no evidence in the record that company gave individual instructions regarding how to collect the debt, nor did company know the methods individual used to collect the debt).  A jury will need to decide whether or not NY Medical controlled Schneider's activity with respect to the collection of Plaintiff's debt.

Where a principal does not control an agent, the principal may still be vicariously liable for the agent's actions where the agent is vested with apparent authority.  *Green Door Realty*

---

[16]     In support of her argument that NY Medical exerted control over Schneider, Plaintiff also refers to Defendants' admission in their brief that on some occasions "if a patient wanted to set up a payment plan, Mr. Schneider would call David Golyan on his own cell phone and the [sic] give the phone to the patient to allow the patient to discuss a payment plan with David Golyan."   *See* Defs.' Mem. [DE 68-1] at 5.  While it is possible that this fact may show that Schneider did not have the authority to set up a plan himself – and therefore was under David Golyan's control – there are other reasonable interpretations of the conduct.  Rather than support Defendants' argument, this highlights the existence of triable issues of fact.

41

*Corp. v. TIG Ins. Co.*, 329 F.3d 282, 289 (2d Cir. 2003).  Issues of fact regarding whether Schneider had apparent authority to act on NY Medical's behalf also preclude summary judgment here.   Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him." *Id.* (internal quotation marks omitted).  "The existence of apparent authority is normally a question of fact, and therefore inappropriate for resolution on a motion for summary judgment." *Id.* "Apparent authority is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." *Id.* (internal quotation marks omitted).  Thus, the issue here is whether NY Medical caused Plaintiff to believe that Schneider had the authority to act on its behalf with respect to the collection of her debt.  The parties dispute whether Plaintiff was told by NY Medical that she should deal exclusively with Schneider in settling her debt.  *See* Defs.' Reply Counterstmt. [DE 71-1] ¶ 38.  If Plaintiff was told that she should deal exclusively with Schneider regarding her NY Medical debt, then Plaintiff may be able to establish vicarious liability on a theory of apparent authority – a question left for the trier of fact.  Defendants' motion regarding NY Medical's liability for Schneider's acts is therefore denied.

### F.      Civil Conspiracy Argument

In connection with her NY GBL § 349, intentional infliction of emotional distress, and slander claims, Plaintiff alleges that Schneider "worked in concert" with the Defendants.  *See* Am. Compl. ¶¶ 65, 78, 91.  Defendants apparently interpret this statement as asserting a claim for civil conspiracy and seeks to have that claim dismissed.  Although civil conspiracy is not an

independent tort, but rather a means for imposing liability on non-actors, a plaintiff seeking to impose liability under this theory must, in addition to alleging an underlying tort, allege the following elements: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Cagan v. Gadman*, No. 08-CV-3710, 2012 WL 1071275, at *4 (E.D.N.Y. Mar. 28, 2012); *see Bigio*, 675 F.3d at 176.

The problem with Defendants' motion is that the Amended Complaint does not mention civil conspiracy. Plaintiff may not recover under a civil conspiracy theory without alleging that a conspiracy existed in her complaint. Therefore, Defendants' motion is moot.

In her opposition brief, Plaintiff argues that, in addition to a civil conspiracy theory, Defendants are also liable for Schneider's acts under an aiding and abetting theory. *See* Pl's. Opp. Mem. [DE 70] at 21. The elements of a claim for aiding and abetting liability are "(1) the existence of an underlying tort; (2) the defendant's knowledge of the underlying tort; and (3) that the defendant provided substantial assistance to advance the underlying tort's commission." *Bigio*, 675 F.3d at 172. This claim, however, fails for the same reason the civil conspiracy claim fails – there is no aiding and abetting claim set forth in the Amended Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [DE 68] and Plaintiff's motion for summary judgment [DE 72] are GRANTED in part and DENIED in part. Specifically:

- •   Plaintiff is entitled to summary judgment on her claim that Schneider violated 15 U.S.C. §§ 1692g and 1692e(11) (with respect to Schneider's recorded voicemail).

43

- Plaintiff's motion for summary judgment is denied on her claim that Schnieder violated 15 U.S.C. §§ 1692c(b), 1692e, 1692e(1), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11) (with respect to Schneider's business card and documents left at Plaintiff's workplace), and 1692f.

- Plaintiff's motion for summary judgment on her NY GBL § 349 claim is denied. Defendants' motion with respect to that claim is also denied, with the exception of Plaintiff's claim based on the allegedly false assertions set forth in the January 19, 2010 and March 15, 2010 letters.  That claim is dismissed.

- Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is granted and the claim is dismissed.

- Defendant's motion for summary judgment on Plaintiff's negligence and negligent hiring/supervision claim is granted, with the exception of the claims based on Schneider's visit to Plaintiff's office that allegedly caused her to fear for her physical safety.

- Defendants' motion regarding NY Medical's vicarious liability for Schneider's acts is denied.

- Defendant's motion regarding a purported civil conspiracy claim is denied as moot.

This matter is set down for a Pre-Trial Conference on October 23, 2012 at 2:30 p.m.

**SO ORDERED.**

Dated: Central Islip, New York
        September 28, 2012

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge