**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GABRIELLE DOUYON,

                                    Plaintiff,

                                                                            **MEMORANDUM**
                                                                            **AND ORDER**

                        - against -
                                                                            CV 10-3983 (AKT)

NY MEDICAL HEALTH CARE, P.C.,
SEYMOUR SCHNEIDER, *a/k/a SY SCHNEIDER*,
KOUROSH GOLYAN, *a/k/a DAVID GOLYAN*,
NATHAN KHAIMOV,
FARAIDOON DANIEL GOLYAN, M.D.,

                                    Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.        PRELIMINARY STATEMENT**

        Before the Court is Plaintiff Gabrielle Douyon's ("Plaintiff" or "Douyon") motion for

reconsideration [DE 89] of the Court's September 28, 2012 Memorandum and Order (the

"Order") [DE 84].  Specifically, Plaintiff requests reconsideration to the extent that the Order (1)

denied summary judgment to Plaintiff regarding violations of §§ 1692e(4) and e(5) of the Fair

Debt Collection Practices Act ("FDCPA"); (2) granted Defendant's motion for summary

judgment on Plaintiff's negligence and negligent hiring/supervision claim, with the exception of

the claims based on Schneider's visit to Plaintiff's office; and (3) dismissed Plaintiff's claims

related to Intentional Infliction of Emotional Distress ("IIED").  DE 89-1.  Defendant Seymour

Schneider ("Defendant" or "Schneider") filed opposition to the motion [DE 89-2] and Plaintiff

has filed a reply [DE 89-3].[1]  Having carefully considered the parties' submissions and the applicable law, the Court finds that Plaintiff has made the requisite showing of controlling decisions or factual matters raised in the underlying motion which warrant reconsideration of the September 28, 2012 Order.  The motion for reconsideration is therefore GRANTED to the extent set forth below.

## II.   STANDARD OF REVIEW

Motions for reconsideration are governed by Local Civil Rule 6.3, which requires the moving party to "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked."  *Myers v. Okada,* No. 08-CV-1635, 2008 WL 4724579, at *1 (E.D.N.Y. Oct. 23, 2008).  A motion for reconsideration is within the sound discretion of the district court.  *See Rates Tech. Inc.*, *v. Mediatrix Telecom, Inc.,* CV 05-2755, 2007 WL 2581776, at *1 (E.D.N.Y. Sept. 5, 2007) (citing, *inter alia, Bueno v. Gill,* 237 F. Supp. 2d 447, 449 (S.D.N.Y.2002)).

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *see Bank v. Independence Energy Gr. LLC*, --- F. Supp. 2d ----, No. 12 Civ. 1369, 2013 WL 1831885, at *2 (E.D.N.Y. May 1, 2013); *Bell Sports, Inc. v. Sys. Software Assocs., Inc.,* 71 F. Supp. 2d 121, 126 (E.D.N.Y. 1999).  Motions for reconsideration "should not

---

[1]   On March 22, 2013, all Defendants except for Seymour Schneider entered into an agreement to settle this action.  *See* DE 95.  On April 17, 2013, this Court "so-ordered" the Stipulation of Discontinuance with Prejudice, Including Vacatur and Dismissing with Prejudice of Judgment Previously Entered Against Plaintiff Regarding Counterclaim ("Stipulation").  *See* DE 97.  Accordingly, the Motion for Reconsideration will be reviewed only insofar as it pertains to Defendant Schneider.

be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. This heightened burden is imposed "to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Comm'r of the Dep't of Transp.,* 687 F. Supp. 888, 890 (S.D.N.Y. 1988), *modified on other grounds*, 934 F.2d 450 (2d Cir. 1991); *see Chepilko v. Cigna Life Ins. Co. of New York,* -- F. Supp. 2d ----, 1012 WL 3387832, at *1 (S.D.N.Y. July 9, 2013); *Equal Employment Opportunity Comm'n v. Fed. Express Corp.,* 268 F.Supp.2d 192, 195 (E.D.N.Y. 2003) (holding that a motion for reconsideration "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court"). The scope of a motion for reconsideration, therefore, is extremely narrow and is an "extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).

## III.   DISCUSSION

### A.   FDCPA §§ 1692e(4) and e(5)

In its September 28, 2012 Order, the Court declined to grant plaintiff's motion for summary judgment on her claims under FDCPA §§ 1692e(4) and e(5) on the grounds that an issue of fact exists with respect to Defendant Schneider's intent to carry out his threat to arrest Plaintiff. *See* Order at 17-18. Under § 1692e(4) of the FDCPA, a debt collector is prohibited from making

> [t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

3

15 U.S.C. § 1692e(4).  Section 1692e(5) of the FDCPA prohibits a debt collector from making

"[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

15 U.S.C. § 1692e(5).  The Court explained that a two-prong test must be applied in determining

whether a debt collector has violated either of these sections: (1) whether the debt collector

threatened legal action or arrest from the vantage point of the "least sophisticated debtor" and (2)

whether the debt collector had both the authority to take legal action and the intent to do so.  *See*

Order at 15 (citing *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1077 (E.D. Cal. 2008); *accord*

*Stein v. Valentine & Kebartas, Inc.*, No. 10-CV-2465, 2012 WL 1416924, at * 3 (E.D.N.Y.

Mar. 15, 2012) *adopted by* 2012 WL 1416901 (E.D.N.Y. Apr. 24, 2012); *Puglisi v. Debt*

*Recovery Solutions, LLC*, 822 F. Supp. 2d 218, 226 (E.D.N.Y. 2011).

      The Court found uncontroverted evidence that Defendant Schneider threatened to arrest

Plaintiff in a voicemail stating:

> (Undecipherable) appreciate necessarily (Undecipherable) by
> coming out to your house with the uh doctors.  I'm gonna be at
> your place tomorrow, at your employment and I'm gonna see
> about coming with the sheriff and have you arrested.  You want to
> play games and I'm gonna play the same game and I'm gonna be
> the winner.

Order at at 5, 14-15.  The Court then turned to the issue whether Schneider could legally take

such action and, secondly, whether he had the intent to do so.  *Id*. at 15.  Citing the New York

Court of Appeals holding in *People v. Jennings*, 69 N.Y.2d 103, 127-28 (1986), the Court found

that, in the State of New York, "the failure of an insured to use the proceeds of a policy to pay

for costs that a policy was intended to cover cannot serve as a basis for a larceny prosecution."

*See* Order at 16.

The Court's analysis encompassed a review of case law in foreign jurisdictions involving claims under §§ 1692e(4) and e(5) of the FDCPA.  *See* Order at 16.  The Court explained that, in analyzing violations of these sections, some courts have considered whether the threatened action is permitted under state law (*Schwarm*, 552 F. Supp. 2d at 1077-79) while others focus on whether "the threatened criminal prosecution or arrest of the debtor is possible or even likely." *Id*. at 17; *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1187-88 (W.D. Wash. 2011).  Utilizing the approach set forth in *Schwarm*, the Court explained that "it would seem that Schneider's actions were lawful since Plaintiff offers no theory as to why it was illegal for Schneider to request that the sheriff arrest [Plaintiff]." *Id*.  However, under the latter theory, namely, whether the threatened criminal prosecution is possible or even likely, the Court found that Schneider's actions "appear to be unlawful because [Plaintiff's] failure to pay NY Medical was not larceny." *Id*. (citing *Jennings*, 69 N.Y.2d at 127-28).  The Court concluded, however, that the illegal nature of Schneider's action was not dispositive of Plaintiff's claims under §§ 1692e(4) and e(5) because "[a]ssuming Schneider's action was lawful, Plaintiff will still need to prove that Schneider had no intention of carrying out his threats."  In reaching this conclusion, the Court observed that although there is no dispute that Schneider "never actually contacted the sheriff," his affidavit notes that he "fully intended to see about the possibility of having Plaintiff arrested" and "discussed that option with David Golyan…." *Id*. at 17-18 (citing Schneider Aff. ¶ 3).  Accordingly, the Court found that there was an issue of fact with respect to Schneider's "intention of carrying out his threats." *Id*. at 18.  As a result, the Court denied Plaintiff's motion for summary judgment on her § 1692e(4) and e(5) claims. *Id*.

In moving to reconsider, Plaintiff argues that the Court "placed a non-existent burden" on Plaintiff in denying her motion for summary judgment for claims brought under FDCPA §§ 1692e(4) and e(5).  *See* Pl.'s Mem. at 2.  Plaintiff asserts that because the Court found there was "no legal possibility of arrest or prosecution" for Plaintiff's failure to pay the debt at issue, whether or not Defendant Schneider actually intended to effect an arrest is irrelevant in analyzing his liability under FDCPA §§ 1692e(4) and e(5).  *Id.*  Since Schneider's threat to arrest Plaintiff for failing to return the health insurance proceeds was not "lawful" and could not "legally be taken," Plaintiff contends that she should be granted summary judgment for her claims under §§ 1692e(4) and e(5).  *Id.* at 4.

Plaintiff relies on case law from foreign jurisdictions to further her argument concerning the FDCPA violations.  *See* Pl.'s Mem. at 4-8.  However, with respect to cases in the Second Circuit, Plaintiff argues that the Court's September 28, 2012 Order misapplied the holdings in *Tragianese v. Blackmon*, 993 F. Supp. 96, 99-100 (D. Conn. 1997) and *Tsenes v. Trans-Continental Credit and Collection Corp.*, 892 F. Supp. 461, 465 (E.D.N.Y. 1995) in finding that there were material issues of fact whether Schneider intended to carry out the threat of arrest.  *Id.* at 6.  Plaintiff contends that like other courts, the courts in *Tragianese* and *Tsenes* analyzed the "intention or probability" of the debt collector's threat to arrest "only after first determining that the threat was legally possible."  *Id.*  Plaintiff therefore argues that one "need only show a lack of intention to follow through on a threat, if the threatened action – such as filing a law suit (*Tesenes*) (sic) or reporting a bad check to the police (*Tragianese*) – was legally possible."  *Id.* at 6-7.

6

Moreover, Plaintiff maintains that the Court misread the plain language of §§ 1692e(4) and e(5).  *See* Pl.'s Mem. at 7.  Plaintiff states that "Schneider's voicemail was a threat of arrest regarding conduct that was not subject to prosecution."  *See* Pl.'s Mem. at 7 (citing Order at 15-16).  Accordingly, Plaintiff argues, "under the plain language of the statute, Plaintiff was entitled to judgment on her e(5) violation without also showing that such action was not intended to be taken."  *See* Pl.'s Mem. at 7.

Plaintiff claims that the Court misread the plain language of FDCPA § 1692e(4) for similar reasons.  *See* Pl.'s Mem. at 7.  Plaintiff parses § 1692e(5) into two sub-parts: (1) "the collector must demonstrate that non-payment will plausibly result in arrest" and (2) "the collector must demonstrate that he intended to have the consumer arrested."  *See* Pl.'s Mem. at 7. The Court's September 28, 2012 Order, Plaintiff argues, "artificially narrows the statute by allowing a debt collector to escape liability by meeting just one of these two requirements, i.e. by allowing the collector to threaten arrest where non-payment is not a crime, so long as the collector intends to report non-payment to the police."  *Id*.  As such, Plaintiff states that the Court's finding of a material issue of fact regarding Schneider's "intention of carrying out his threats" is inconsistent with the plain reading of § 1692e(5) under the facts presented in this action.  *See id*. at 7-8; *see also* Order at 17-18.

Finally, Plaintiff claims that the Court's consideration of Schneider's statement (*i.e.*, that he "fully intended to see about the possibility of having Plaintiff arrested" and "discussed that option with David Golyan…") as a basis to deny plaintiff's motion for summary judgment on her § 1692e(4) and (5) is "also misplaced for policy reasons."  *See* Pl.'s Mem. at 8; *see also* Order at 17-18.  According to Plaintiff, the Court's September 28, 2012 Order would "allow debt

collectors who make illegal threats to absolve themselves by testifying after the fact that they fully intended to seek arrest."  Pl.'s Mem. at 8.  Plaintiff does not cite any case law supporting this policy argument.

      In opposing Plaintiff's motion for reconsideration, Schneider argues that Plaintiff improperly relies on case law from foreign jurisdictions and misapplies their holdings in concluding that the Court's September 28, 2012 Order was erroneous.  *See* Def.'s Opp. at 2.  Defendant asserts that Plaintiff misunderstands the "least sophisticated consumer" test.  *Id*. However, Defendant does not dispute that the Court must assess the legality of a threatened action by looking at state law.  *Id*. at 3.  Under Defendant's reading of § 1692e(4), a threat to arrest, such as Schneider's voicemail here, must satisfy two elements ("connected by injunction 'and'") to establish a violation of this section:  (1) "the debt collector's action must be lawful" and (2) the "debt collector must have intent to take such action."  *Id*. at 4.  Defendant submits that the Court "appropriately placed a burden on Plaintiff to prove that Mr. Schneider did something unlawful and that he had no intention of carrying out his threats."  *Id*. at 5 (citing Order at 17-18).  Consequently, Defendant claims that "Plaintiff has not carried her burden of establishing the unlawfulness element of subsection (4)."  *Id*.

      In evaluating liability under § 1692e(4), Defendant asserts that a court must consider "whether the law permits a debt collector to pursue the debtor."  *See* Def.'s Opp. at 5.  In the words of Defendant, "[i]f the law prohibits such action, yet the debt collector persists, then [the] debt collector has done something unlawful."  *Id*.  However, Defendant contends that the "analysis cannot end there" since a plaintiff would "then have to establish that the debt collector did not have intent to pursue the action."  *Id*.  Defendant argues that § 1692e(4) is materially

different from § 1692e(5), in which the word "or" is "placed between the two elements, thus having the obvious implication that if either element is satisfied then Plaintiff has successfully established a violation of e(5)." *Id*. To establish a violation of § 1692e(4) then, Defendant argues, the lawfulness of the debt collector's action and his or her intent must be satisfied. *Id*. The Court, according to Defendant, reached the correct conclusion by finding that there was a triable issue of fact whether Schneider intended to effect Plaintiff's arrest. *Id*. Moreover, Defendant maintains that "Plaintiff has not established that Mr. Schneider did anything unlawful." *Id*. On that basis, Defendant asserts that the Court should adhere to its original decision concerning § 1692e(4) of the FDCPA.

With respect to § 1692e(5) of the FDCPA, Defendant maintains that the Court correctly denied Plaintiff summary judgment because the "proper question is whether [Defendant] Schneider intended to carry out the threat that he left on Plaintiff's answering machine." *See* Def.'s Opp. at 7. Defendant's counsel claims that since Schneider stated he intended to make an arrest, this raises an issue of fact which precludes summary judgment on the § 1692e(5) claim. *Id*. at 7. In making this argument, Defendant does not address the Court's finding that the "failure of an insured to use the proceeds to pay for costs that a policy was intended to cover cannot serve as a basis for a larceny prosecution" under New York Law. *Id*; Order at 16 (citing *Jennings*, 69 N.Y.2d at 127-28).

In reply, Plaintiff asserts that Defendant's opposition engages in an irrelevant discussion of the "least sophisticated consumer" standard and misinterprets the plain meaning of §§ 1692e(4) and e(5) of the FDCPA. *See* Pl.'s Reply at 2-4. According to Plaintiff, Defendant "propose[s] a reading of 1692e(4) that turns the statute on its head to conclude that the language

places a burden on a plaintiff to show that a debt collector both (1) threatened to arrest illegally and (2) did not intend to take such action, regardless of the illegality." *Id*. at 2-3.  Plaintiff reiterated in her reply that since the Court ruled there was no legal basis for Schneider's threat of arrest, the plain language of 1692e(4) requires that a violation be found on that basis alone since the action was not "lawful."  *Id*. at 3 (citing 15 U.S.C. § 1692e(4)).  Plaintiff takes issue with Defendant's claim that a Court must continue its analysis of a purported violation of § 1692e(4) even *after* having found that the threat was unlawful.  *Id*. (citing Def.'s Opp. at 5). Positing that this argument fails for two reasons, Plaintiff states:  (1) "it flatly contradicts the plain meaning of the text" and (2) such a reading of 1692e(4) "turns a prohibition into a permissive statute that allows illegal threats of arrest as long as a debtor intended the illegal action."  *Id*.

According to the Plaintiff, the Defendant has also misconstrued § 1692e(5).  *See* Pl.'s Reply at 3.  This section may be violated in two independent ways, namely, the threat by a debt collector to take an illegal action *or* a threat that is not intended to be taken, the import of which Plaintiff contends has been ignored by the Defendant.  *Id*. at 4.  Defendant bypasses the Court's holding that Schneider's voicemail presented a threat of arrest for an act which is not illegal under New York law.  *Id*.  As a result, Schneider "erroneously suggest[s] that his voicemail did not violate 1692e(5)."  *Id*.  Moreover, Plaintiff suggests that Schneider's reliance on *Leone v. Ashwood Fin. Inc.*, 257 F.R.D. 343, 350 (E.D.N.Y. Mar. 16, 2009) is misplaced.  *Id*.  Contrary to Defendant's assertions, *Leone* does not suggest that a "Court must look into a debt collector's intent" even after concluding that the threatened action could not "legally be taken" under

§ 1692e(5).  *Id.*  Plaintiff maintains that *Leone*, in which the court analyzed the debt collector's intent, is distinguishable from the instant action because in that case, the court decided not to make any finding that the threat to sue was not legally possible.  *Id.*  Explaining *Leone*, Plaintiff asserts that "[s]ince the threatened action [was] not itself illegal, it follows that a court would then inquire as to whether the collector intended the action at the time it was threatened."  *Id.*  Since the illegality of Schneider's threat to arrest Plaintiff is undisputed, Defendant's reliance on *Leone* to argue that the element of intent must be satisfied under § 1692e(5) is unavailing.

The Court has reconsidered its September 28, 2012 Order and is persuaded that Plaintiff should be granted summary judgment on her claims under FDCPA §§ 1692e(4) and e(5).  After concluding in the September 28, 2012 Order that Plaintiff "could not have been arrested for larceny as a result of [her] conduct because NY Medical was not the owner of the checks," the Court was obliged to find that Schneider's undisputed threat to arrest Plaintiff for that very conduct was, as a matter of law, a violation of §§ 1692e(4) and e(5).  *See* Order at 16.  Indeed, as cited in the Order, the New York Court of Appeals has held that "the failure of an insured to use the proceeds of a policy to pay for costs that a policy was intended to cover cannot serve as a basis for a larceny prosecution."  *Id.* (citing *Jennings*, 69 N.Y.2d at 127-28).  That is precisely the conduct Schneider was addressing in his voicemail to the Plaintiff and for which he told the Plaintiff she could be arrested.

Moreover, this Court's conclusion that the Court of Appeals holding "does not necessarily resolve the issue of whether Schneider's actions with respect to initiating Plaintiff's arrest were lawful" was incorrect.  *Id.*  The unlawfulness of Defendant Schneider's threat to

11

arrest, standing on its own, is dispositive of these FDCPA claims.  15 U.S.C. §§ 1692e(4) and e(5).

The plain language of §§ 1692e(4) and e(5) establishes a violation in light of evidence that a debt collector has made an unlawful threat to arrest a creditor.  15 U.S.C. §§ 1692e(4) and e(5).   Under § 1692e(4), "[t]he representation or implication that nonpayment of any debt will result in the arrest," *inter alia*, of a creditor is prohibited "unless such action is lawful and the debt collector or creditor intends to take such action."  15 U.S.C. § 1692e(4).  In the September 28, 2012 Order, the Court found undisputed evidence in the record that Schneider's voicemail indicated that "he was going to have the sheriff arrest" Plaintiff.  Order at 15.  Under the plain meaning of § 1692e(4) alone, this Court should have granted Plaintiff summary judgment on this claim.  Similarly, with respect to Plaintiff's claim under § 1692e(5), a debt collector's "threat to take any action that cannot legally be taken" is prohibited.  15 U.S.C. § 1692e(5).  Thus, as a matter of law, Defendant Schneider's unlawful threat to arrest Plaintiff for failing to use insurance proceeds for costs that her insurance policy was intended to cover constituted a violation of § 1692e(5).  *See Jennings*, 69 N.Y.2d at 127-28; *see also United States v. Livecchi*, 711 F.3d 345, 351 (2d Cir. 2013) ("Although the general rule of statutory interpretation is that a statute should be enforced according to its plain and unambiguous meaning…the plain meaning will not control where literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (internal citation and quotations omitted).

In its prior Order, the Court explained that under *Schwarm*, 552 F. Supp. 2d at 1077-79, the inquiry into whether Defendant's threat of arrest was lawful is dependent upon applicable state law.  Order at 16-17.  The Court thus concluded that "Schneider's actions were lawful since

12

Plaintiff offers no theory as to why it was illegal for Schneider to request that the sheriff arrest Douyon." Order at 17 (citing *Schwarm*, 552 F. Supp. 2d at 1077-79). As an initial matter, after undertaking a further review of *Schwarm*, it appears that the holding in *Schwarm* supports - not rejects - the granting of summary judgment to Plaintiff on her §§ 1692e(4) and e(5) claims. A request by Schneider that the sheriff arrest Plaintiff for non-payment would on its face constitute a violation of the FDCPA sections at issue because such an arrest is unlawful under New York State law. *See Jennings*, 69 N.Y.2d at 127-28.

Secondly, as Plaintiff points out, the court in *Schwarm* was considering a specific provision of the California Penal Code prohibiting the making or delivering of checks with insufficient funds, which was the source of the underlying debt allegedly owed by the plaintiff in that FDCPA action. *Schwarm*, 552 F. Supp.2d at 1077. As this Court explained, *Schwarm* involved the evaluation of whether a "merchant was able to make a probable cause determination under California's Bad Check Division Act." Order at 18. Ultimately, the court in *Schwarm* denied plaintiff summary judgment on her §§ 1692e(4) and e(5) claims due to the lack of "sufficient evidence" to determine that the district attorney "made the requisite probable cause determination" and "considered the requisite" factors under the statute. *Schwarm*, 552 F. Supp.2d at 1079. Significantly, in *Schwarm*, the court found there was an issue of fact whether California law authorized the actions taken by the debt collector to establish a violation of FDCPA §§ 1692e(4) and e(5) as a matter of law. *Id.* No such issue of fact exists here. Rather, the holding in *Schwarm* reaffirms that, in assessing a debt collector's threats to arrest, a court must consider whether or not the actual threat was lawful under governing state law. This Court's September 28, 2012 Order found Schneider's threat to arrest the Plaintiff to be unlawful.

13

The inquiry should have ended there.  Consequently, the Plaintiff has established a violation of §§ 1692e(4) and e(5).

However, this Court went on to assume, in error, that even if Defendant's actions were arguably lawful, Plaintiff would still need to prove that Schneider had no intention of carrying out his threats.  Order at 17.  After conducting a further review of the case law cited in its September 28, 2012 Order, the Court finds that neither *Tragianese*, 993 F.Supp. at 99-100 nor *Tsenes*, 892 F. Supp. at 465 require Plaintiff to establish that Schneider "had no intention of carrying out his threats" to meet her burden at summary judgment.  *See id*.  For example, in *Tragianese*, the court found that a debt collector's threat to refer plaintiff's collection matter to the police did not violate §§ 1692e(4) and e(5) because plaintiff failed to present evidence of the debt collector's intent to "follow through on the threatened action."  *Tragianese*, 99 F.Supp. at 99-100.  However, the debt collector's threat to refer the collection matter to the police was not itself unlawful and, thus, was not dispositive of plaintiff's motion for summary judgment, unlike the threat of arrest made by Schneider here.  *Id*.

In *Tsenes*, the court denied the debt collector's motion to dismiss the complaint and held that plaintiff stated a claim under §§ 1692e(4) and e(5) of the FDCPA since the complaint alleged that the debt collector "did not have authority to commence legal action."  892 F.Supp. at 265.[2]  Neither of these cases holds a plaintiff must demonstrate that *both* the threatened action was unlawful and that the debt collector intended to follow through on the unlawful threat.  Thus, Schneider's unlawful threat to arrest Plaintiff here for failing to remit insurance proceeds in itself

---

[2]     Although the court in Tsenes explained that "[a]t a later stage in the litigation…the plaintiff will have to substantiate its allegation and affirmatively show that the defendant did not intend to bring legal action," 892 F. Supp. at 465, there is no indication in Tsenes that intent is a required element under either 1692e(4) or e(5) if the evidence borne out in discovery affirmatively indicates that the debt collector had no legal authority in the first instance to carry out a threat of arrest against a creditor as seen in the matter presented here.

established a violation of FDCPA §§ 1692e(4) and e(5).  *Cf. Goldberg v. Transworld Systems, Inc.*, 164 F.3d. 617 (2d. Cir. 1998) (affirming summary judgment under § 1692e(5) in favor of debt collector who had a "right to pursue its legal remedies").

    The Court has also looked to other cases dealing with these issues.  For example, in *Ford v. Principal Recovery Group, Inc.*, No. 09 Civ. 627, 2012 WL 930334, *2 (W.D.N.Y. Mar. 19, 2012), a debt collector employed by a physician informed the plaintiff that failure to pay her medical bill could result in (i) a legal action to collect the debt, (ii) adverse effects on Plaintiff's credit history, and (iii) potential garnishment of the plaintiff's wages.  The court granted the debt collector's motion for summary judgment dismissing plaintiff's claims under §§ 1692e(4) and e(5) because the debt collector did not threaten to take any *illegal* or unintended action or represent that nonpayment would result in any *unlawful* or unintended action.  *Id.* at *2 (emphasis added).  Unlike the debt collector in *Ford*, Defendant Schneider had no authority under New York law to threaten Plaintiff with arrest for failure to send back insurance proceeds.  Consequently, Schneider's threat to arrest Plaintiff is dispositive of these claims.  *See Henneberger v. Cohen & Slamowitz, LLP*, No. 07 Civ. 804, 2010 WL 1405578, at *5 (W.D.N.Y. Mar. 31, 2010) (denying defendant's motion for summary judgment on plaintiff's FDCPA §§ 1692e(4) and (5) claims as "defendant's employee threatened to seize resources which could not legally be seized").  Similarly, in *Montgomery v. Florida First Financial Group, Inc.*, No. 06 Civ. 1639, 2008 WL 3540374, at *5 (M.D. Fla. Aug. 12, 2008), the court granted plaintiff's motion for default judgment on her §§ 1692e(4) and e(5) claims after finding evidence of the debt collector's unlawful representation that he possessed a warrant for plaintiff's arrest and that he was going to send a deputy sheriff to effect the arrest.  Likewise, in *Lensch*, 795 F.Supp 2d. at

15

1184-85, the court found that a debt collector's notice to refer plaintiff's dishonored check to law enforcement to initiate criminal proceedings was "in clear violation of the FDCPA because…instituting criminal proceedings would not have been a lawful action as the statute of limitations had already run."[3] *See Martsolf v. JBC Legal Group, P.C.*, No. 04 Civ. 1346, 2008 WL 275719, at *5 (M.D. Pa. Jan. 30, 2008) (granting plaintiff's motion for summary judgment on § 1692e(5) claim as debt collector threatened litigation after the limitations period had elapsed); *see also Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) ("[T]he threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate.").

On second viewing, the Court is persuaded by Plaintiff's argument that "it is only when the threat of arrest has some legal basis that a court looks into the subjective intent of the creditor or collector." Pl.'s Mem. at 4 (citing *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 917 (W.D. Mich. 2002); *West v. Costen*, 558 F. Supp. 564, 578 (W.D. Va. 1983)). The Court's September 28, 2012 Order cited *Gradisher, West* and *Lensch*, 795 F. Supp. 2d at 1185-88 for the principle that courts "focus on whether the threatened criminal prosecution or arrest of the debtor is possible or even likely" in assessing claims under FDCPA §§ 1692e(4) and e(5). Order at 17. Given the plain language of §§ 1692e(4) and e(5), the Court finds that this interpretation constitutes the proper application of the FDCPA. Accordingly, the Court grants

---

[3]    Although the court in *Lensch* held that the debt collector's notice violated FDCPA § 1692e(4) because instituting criminal proceedings would not have been lawful and the debt collector had no intention to turn over the check to law enforcement, nowhere does the *Lensch* court *require both* unlawfulness of action and lack of intent to establish a violation of § 1692e(4). *See Lensch*, 795 F.Supp 2d. at 1184-85.

16

Plaintiff's motion for reconsideration of the Order and further grants Plaintiff summary judgment on her claims under §§ 1692e(4) and e(5).

### B.    Negligence Claims

Plaintiff next argues that the Court's September 28, 2012 Order improperly limited her negligence and negligent hiring/supervision claims against NY Medical Health Care, P.C. ("NY Medical") and Faraidoon Daniel Golyan, M.D. ("Dr. Golyan") by permitting these claims to go to trial, but "only to the extent that they are based on Schneider's visit to Plaintiff's office which allegedly caused her to fear for her physical safety." Order at 37; Pl.'s Mem. at 8-9. Plaintiff points to the following deposition testimony to argue that her "fear of physical injury stemmed from all of her contacts" with Defendant Schneider – not just his visits to her office:

> [W]hen I'm driving if in fact somebody is tailgating me I'm kind of concerned [because Schneider] left a message he knows how to handle people like me.
>
> I'm afraid to take the elevator. I'm afraid to do anything. I was just afraid.
>
> I feel as if I was being threatened, that somebody would come and shoot me one day, maybe tomorrow. The way that he expressed himself that he knows, he knows how to handle people like me. He's used to that and he's always come out a winner.

Pl.'s Mem. at 8 (citing Order at 35). Accordingly, Plaintiff argues that the Court should amend the September 28, 2012 Order to allow her negligence claims to proceed "based on the totality of Mr. Schneider's contacts" with Plaintiff, including "his visits to her office, his visits to her home, and the voicemail message." *Id*. at 8-9.

Defendant argues in opposition that, in seeking to amend the negligence claims, Plaintiff has failed to draw the Court's attention to any facts or controlling authority it overlooked in

17

issuing its Order.  Def.'s Opp. at 7.  Defendant notes that the Court considered all of Plaintiff's interactions with Schneider and found that "[n]one of the other acts alleged, e.g. phone calls, demanding more interest than Plaintiff actually owed, etc., satisfy the guarantee of genuineness required for a negligence claim seeking emotional distress damages."  *Id*. (citing Order at 35). Defendant contends that the Court did not overlook anything in its Order, noting that Plaintiff possesses the burden of proof to demonstrate emotional harm.  *Id*.  As such, Plaintiff failed to demonstrate "some guarantee of genuineness."  *Id*.  (citing *Ferrara v. Galluchio*, 5 N.Y.2d 16 (1958)).  Moreover, Defendant states that although a fear of injury can demonstrate genuineness, the "conduct giving rise to fear of injury must be direct and immediate."  *Id*. (citing *Johnson v. State of New York*, 37 N.Y.2d 378 (1975)).

Applying this standard, Defendant seeks to uphold the Court's Order.  *See* Pl.'s Opp. at 8. Defendant notes that after consideration of all the encounters between Plaintiff and Schneider, the Court correctly found that "only the office encounter has the potential of being characterized as a direct threat of injury" and all the remaining conduct is "too remote to satisfy this element." *Id*.

The Court notes that Plaintiff's motion to reconsider the Court's Order concerning the negligent hiring, retention, training and supervision claims are now moot.  Subsequent to filing the motion for reconsideration, Plaintiff discontinued this action against all of the Defendants except Seymour Schneider.  *See* DE 97.  According to the mootness doctrine, "if an event occurs . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case, rather than issue an advisory opinion."  *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060, 2009 WL 1118098, *4 (S.D.N.Y. April 27, 2009) (internal

18

citation and quotation omitted).  Here, Plaintiff asserted claims of negligent hiring, training and supervision against former defendants N.Y. Medical and Dr. Golyan only.  *See* Am. Compl. ¶¶ 94-103 [DE 53].  Similarly, Plaintiff's cause of action for negligence was alleged solely against N.Y. Medical and Dr. Golyan.  Id.  ¶¶ 104-112.  Plaintiff has not asserted any negligence claims against the only remaining Defendant, Seymour Schneider.  Accordingly, any reconsideration of the Court's Order pertaining to Plaintiff's negligence claims would constitute nothing more than an advisory opinion.  *See Gordon v. Softech Intern., Inc.*, No. 10 Civ. 5162, 2012 WL 512935, at *1 (S.D.N.Y. Feb. 15, 2012) (directed that plaintiff's motion for reconsideration has "been discontinued by the Court as it was rendered moot when the parties settled and the Court discontinued the case"); *see also Parker Waichman LLP v. Gilman Law LLP*, No. 12 Civ. 4784, 2013 WL 3863928, *1 (E.D.N.Y. July 24, 2013) (noting that defendant's motion for judgment on the pleadings was denied as moot when a consent judgment was entered by the court).  Thus, the Court denies the motion for reconsideration with respect to Plaintiff's negligence claims.

### C.    Intentional Infliction of Emotional Distress

Finally, Plaintiff seeks to amend the September 28, 2012 Order on the grounds that she had already withdrawn her claim of Intentional Infliction of Emotional Distress ("IIED") and that issue was not before the Court.  Pl.'s Mem. at 9.  Plaintiff correctly notes that although she formally withdrew her IIED claim in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [DE 70], the Court inadvertently addressed this claim on its merits and granted Defendants summary judgment.  *Id.*; Order at 32.  Accordingly, the Court grants Plaintiff's motion for reconsideration and strikes the portion of the September 28, 2012

Order, namely, Section III(C), which contains the discussion and ruling on the IIED claim which was voluntarily withdrawn and discontinued.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for reconsideration is GRANTED and the Court amends the September 28, 2012 Order as follows:  (1) Plaintiff's motion for summary judgment for claims brought pursuant to 15 U.S.C. §§ 1692e(4) and e(5) is GRANTED; (2) The negligent hiring, retention, training and supervision claims are deemed moot and thus reconsideration is not necessary; and (3) Section III(C) of the Order discussing and ruling on the claim for intentional infliction of emotional distress is stricken.

**The Court has scheduled an in-person conference for October 7, 2013 at 10 a.m. Counsel are directed to mark their calendars accordingly.**

**SO ORDERED.**

Dated: Central Islip, New York
         September 25, 2013

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON