**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GABRIELLE DOUYON,
        Plaintiff,

      v.

NY MEDICAL HEALTH CARE, P.C.,
SEYMOUR SCHNEIDER, *a/k/a SY SCHNEIDER*,
KOUROSH GOLYAN, *a/k/a DAVID GOLYAN,*
NATHAN KHAIMOV,
FARAIDOON DANIEL GOLYAN, M.D.
        Defendants.

Index No.: 10-cv-3983

Hon. A. Kathleen Tomlinson

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPLICATION FOR ATTORNEY'S FEES AND COSTS

February 21, 2014

Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
*Attorneys for Plaintiff*
9 East 40th Street, Suite 1300
T. (914) 946-1981, ext. 101
F. (914) 946-2930
daniel.schlanger@schlangerlegal.com
peter.lane@schlangerlegal.com

# TABLE OF CONTENTS

I. Plaintiff Was Successful Against Schneider ............................................................. 1

II. Defendant's Proportionality Argument Fails .......................................................... 2

III. Plaintiff's Records Are Not Vague Or Excessive ................................................... 3

    1. Plaintiff's Records Are Not Vague ..................................................................... 3

    2. The Records Adequately Describe the Time Spent on Germane Tasks. ........... 4

    3. Plaintiff's Counsel Engaged in Necessary and Successful Work, Often in Reaction to Overzealous and Baseless Defense Tactics. ........................................................ 5

IV. All Fees For Travel Are Compensable .................................................................. 7

V. Because The Claims Against Defendant Arise From A Common Core Of Facts, All Work Performed Is Compensable As Against Schneider. ...................................... 7

VI. Plaintiff's Counsels' Hourly Rates Are Reasonable .............................................. 9

VII. Conclusion ........................................................................................................... 10

Plaintiff Gabrielle Douyon, by and through her attorneys, Schlanger & Schlanger, LLP, respectfully submits this Reply Memorandum in further support of her application for fees and costs. As set forth below, Defendant Schneider's papers are riddled with factual and legal errors, and his arguments are, with limited exceptions noted below, wholly without merit.

### I. Plaintiff Was Successful Against Schneider

Defendants argue that Plaintiff's fees should be reduced because, although she received the maximum statutory damages under the FDCPA and GBL Sec. 349 against Defendant Schneider, the settlement with Schneider did not provide for actual damages, and therefore achieved "extremely limited success at best". Opp. at 5.

As a preliminary matter, the Supreme Court has held that a "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit". Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). And as the Court elaborated in Mautner v. Hirsch, 831 F. Supp. 1058 (S.D.N.Y. 1993):

> We do not approve the deduction for work on legal theories that proved "unfruitful" but were not found to have been frivolous. Lawyers for plaintiffs . . . no less than other litigators, must evaluate, accept and prosecute suits on the basis of the entire spectrum of theories that show early promise of vindicating their clients' rights. Every lawyer, indeed every judge, has pursued blind alleys that initially seemed reasonable or even professionally obligatory. To reward only the pursuit of a successful theory in cases such as this undercompensates the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely.

Id. at 74 (citations omitted).

Here, as against Schneider, Plaintiff recovered the maximum statutory damages available under the FDCPA (*i.e.* $1,000). Courts in this Circuit have repeatedly limited the award of the FDCPA's maximum statutory damages to cases in which the acts of the debt collector are "particularly egregious". Gonzalez v. Healthcare Recovery Mgmt., 2013 U.S. Dist. LEXIS 129115, 5-6 (E.D.N.Y. 2013). In addition, Plaintiff recovered $50 in GBL § 349 damages from

Schneider.

Numerous cases, in this Circuit and elsewhere, have declined to reduce attorney's fees based on "limited success" where a consumer recovers some or all of the FDCPA statutory damages sought, but little or none of the other relief demanded. See, e.g. Rodriguez v. Pressler & Pressler, L.L.P., 2009 U.S. Dist. LEXIS 20655, 3-4 (E.D.N.Y. 2009)(rejecting Magistrate's Recommendation that fees be reduced by 50% for limited success where consumer abandoned FDCPA actual damages and state law claims and secured no injunctive relief but recovered maximum FDCPA statutory damages); Whitt v. Receivables Performance Mgmt., LLC, 2012 U.S. Dist. LEXIS 142182, 12-14 (D.N.J. 2012)(declining to reduce fees for limited success where consumer abandoned claims for actual damages and accepted offer of judgment for $1001).[1]

Where Courts have applied more severe cuts, it has typically been on the basis that the FDCPA violation was a mere "technical violation" and/or that defendant had previously offered in settlement the relief ultimately achieved, making Plaintiff's post-offer work less reasonable. See, e.g. French v. Corporate Receivables, Inc., 489 F.3d 402, 403 (1st Cir. 2007).

Accordingly, because Plaintiff recovered maximum FDCPA statutory damages, as well as relief pursuant to § 349, and in light of Schneider's failure to make any prior settlement offer (Schlanger Decl. at para. 15-29), this Court should not apply any reduction for "limited success".

## II. Defendant's Proportionality Argument Fails

Much of Defendant's brief is, in essence, a plea to require proportionality between the amount awarded for fees and the financial interests at stake in the litigation. In other words, having vigorously contested the litigation at every stage prior to settlement, Schneider now

---

[1] Indeed, even where a consumer recovers FDCPA damages of less than $1000, Courts have typically applied only modest reductions. Hepsen v. J.C. Christensen & Assocs., 394 Fed. Appx. 597, 601 (11th Cir. Fla. 2010)(10% reduction for limited success upheld where consumer sought full FDCPA statutory damages, as well as actual and punitive damages and recovered only $500 in statutory damages.)

wishes to evade responsibility for the fees incurred as a result by imposing a requirement that the fees be proportional to the relief obtained, such that a hypothetical client pursuing the case on a fee-for-service basis would have authorized the expenditure.

This argument has been repeatedly rejected by the Second Circuit. Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005)("we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."). See Plaint. MOL at 9 (collecting cases).

Moreover, Schneider's attempt to criticize the interviewing of witnesses and other work that would have been essential to proceeding at trial absent settlement is precisely the type of hindsight-based analysis prohibited by the caselaw. Specifically, in determining what work was reasonably performed, Courts may not engage in "ex-post facto" analysis, asking whether – in hindsight – a particular task or set of tasks was worth engaging in. Orient Overseas Cont. v. Crystal Cove Seafood, 2012 U.S. Dist. LEXIS 182821, 8-9 (S.D.N.Y. 2012). Rather, a Court must analyze whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

### III. Plaintiff's Records Are Not Vague Or Excessive

Defendant mischaracterizes Plaintiff's records as consisting of 50% vague and block billing entries. Given the descriptive nature of the records, Defendant's argument fails.

### 1. *Plaintiff's Records Are Not Vague*

Time records in support of a fee application, "need not be significantly detailed [but] must identify the general subject matter of the claimed time expenditure" to allow the court to make a determination that the time expended on a given task was reasonable. Tucker v. Mukasey, 2008 U.S. Dist. LEXIS 48687, 4-5 (S.D.N.Y. 2008). Moreover, "it would be unrealistic and unduly burdensome to expect counsel to set forth in minute detail precise work claimed in each entry." Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001).

Defendant's assertions to the contrary, Plaintiff's time records are sufficiently detailed time records under this standard.

Defendant relies on a series of cases where the Court reduced fees for vagueness as the records in question merely contained such phrases as "letter to court," "phone call with client," or "review records" without any description of the nature of the calls or the contents or topics of discussions or letters written. See e.g. Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172-173 (2d Cir 1998); Mukasey, 2008 U.S. Dist. LEXIS 48697 (S.D.N.Y. 2008); Sabatini, at 522.

The time records attacked by Defendant do not follow this pattern, but rather, are more detailed. For example, Schneider points the Court to clearly descriptive time entries such as "continue to revise Memorandum of Law and also 56.1 opposition" and "preparing reply in further support of Plaintiff's Motion for Summary judgment" as somehow vague. Opp. at 5-6. Likewise Schneider cites Daniel Schlanger's 11/7/2011 and 12/6/2011, which read as follows: "7.8 hrs - Revising and additions to Memorandum of Law, including additional research and extensive bolstering with citations to record" and "6.2hrs – extensive editing, additional research, etc. re: Memorandum of Law in Opposition to Defendants' summary judgment motion."

Because Plaintiff's counsels' time records provide sufficient detail to determine the reasonableness of the time expended, they are adequate.

### 2. The Records Adequately Describe the Time Spent on Germane Tasks.

Defendant also alleges impermissible "block-billing." Defendant is wrong. Block-billing is faulted for including in a single time-entry multiple tasks on various matters without explanation of how long each task took to complete. For example, in Laboratorios Rivasm, SRL v. Ugly & Beauty, Inc., 2013 U.S. Dist. LEXIS 161188, *57-58 (S.D.N.Y. 2013), relied on by Defendant, a single entry included widely disparate tasks ("further review and revision supporting affidavits including drafting affidavit for Franco Rivas; follow up with Castillo and

client re Castillo sales figures; review and correspondence with client re list of potential defendants and related matters...").

Plaintiff's time records do not suffer from such deficiencies. For example, the time entry for Daniel Schlanger on 6/27/2011 cited by Defendant as a "block billing" provides a detailed description of the extensive work Attorney Schlanger conducted in "editing of all portions of Memorandum of Law in support of 12b1 and 12b6 motion, proofing, editing AOS [affidavit of service], and NOM [notice of motion]." Likewise, a time entry for Peter T. Lane on 11/7/11, also cited by Defendant, provides an equally detailed description of the work Attorney Lane conducted in "editing, researching Memorandum of Law, editing 56.1 statements" in support of an extensive motion for summary judgment, including "preparing exhibits, reviewing all and preparing for service." Although each of these entries record large portions of time, they are detailed descriptions of the various tasks that are germane to the preparation of a single motion. As such, they provide the Court with sufficient information, and are not deficient.[2]

### 3. Plaintiff's Counsel Engaged in Necessary and Successful Work, Often in Reaction to Overzealous and Baseless Defense Tactics.

Defendant complains that Plaintiff's counsel has billed for duplicative work and overstaffing. As a preliminary matter, there is nothing wrong with staffing a case with more than one attorney, and there is nothing wrong with the attorneys reviewing one another's work or having attorneys work collaboratively on motions or other case-related tasks. The Court addressed and rejected similar arguments in <u>Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp.</u>, stating as follows:

> [Defendant's attack] on the use of more than one lawyer to write and edit briefs, mistake professionalism that resulted in high-quality advocacy for duplicative effort. Having more than one attorney "'research and participate in drafting a brief is a common practice and therefore not necessarily duplicative.'" "Many tasks

---

[2] Defendant does correctly point out that the undersigned inadvertently included a non-billable entry dated 5/4/2011 related to having a decision in this case published. I apologize to this Court for not having caught this error earlier. Plaintiff's fee request is adjusted downward accordingly in the Conclusion of this Reply.

require or benefit from the attention of more than one attorney." 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002)(citing Broome v. Biondi, 17 F. Supp. 2d 230, 235 (S.D.N.Y. 1997)). Moreover, much of Plaintiff's time has been a necessary response to overzealous, baseless, and ultimately unsuccessful defense tactics. See e.g. Douyon v. N.Y. Med. Health Care, P.C., 2011 U.S. Dist. Lexis 47850 (E.D.N.Y. 2011) *adopted at* 2011 U.S. Dist. LEXIS 57286) (characterizing Defendants' Answer and Counterclaims as showing a "complete disregard for the rules for pleading" and noting that despite Defendant's repeated promises to amend, it required Plaintiff's motion practice to "bring Defendants' counsel to the point of action."); Plaint. MOL at pp. 1-5.

Moreover, Schneider has employed at least 5 attorneys over the course of the instant litigation, *i.e.* the same number as have worked on the file on Plaintiff's behalf. Schlanger Dec. at paras. 8-14 (noting that although five attorneys have worked on the case over the past four years, one of these attorneys expended only 4.4 hours, and another, who worked on the file in 2010, prior to Mr. Lane joining the firm, expended only 13 hours). For example, Schneider attacks the attendance of both Mr. Lane and Mr. Schlanger at a settlement conference, but Schneider was represented by three attorneys at the same conference. Id.

Even more absurd is Defendant's repeated attempt to portray certain work performed by Attorney Lane as an attempt to have Defendant pay for Plaintiff's counsel's errors. As explained in Mr. Lane's Declaration, the time complained of was spent correcting opposing counsel's errors after he publicly filed Plaintiff's personal identifying and other protected information in violation of Fed. R. Civ. P. 5.2.

More generally, Defendant attempts to disown the ways in which the expenditure of time by Plaintiff's attorneys has been a direct response to Defendants' own conduct. For example, after completion of discovery, Schneider opposed summary judgment for his liability under both

the FDCPA and NYGBL § 349. And when Plaintiff won partial summary judgment on some issues under the FDCPA and then sought reconsideration of the Court's decision regarding Schneider's liability for false threats under FDCPA § 1692e(4) and (5), he unsuccessfully opposed that motion, as well. Now, Defendant suggests that Plaintiff's success was entirely the result of Schneider's admissions at his depositions in 2011. And yet, Defendants did not come to any settlement in this matter for 2.5 years following that deposition and not until unsuccessfully opposing summary judgment and reconsideration.

Defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by Plaintiff in response." City of Riverside v. Rivera, 477 U.S. 561, 581 (1986). See, e.g. Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 298 (1st Cir. 2001)("After setting . . .a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous . . . to castigate the plaintiffs for putting too many troops into the field.")

### IV. All Fees for Travel Are Compensable

Defendant's suggestion that fees associated with travel from outside the district are not compensable is incorrect. Opp. at 23. Defendant relies entirely on the report and recommendation in Mister Sprout v. Willams Farms Produce Sales, 881 Supp.2d 482, 491 (S.D.N.Y. 2012). However, the portion of the report denying fees for travel for an out of state attorney was rejected by the District Court's subsequent Decision and Order which found the time compensable. 2012 U.S. Dist. LEXIS 103846. The Court here should award fees for all attorney travel, which already include this Circuit's customary 50% reduction.

### V. Because The Claims Against Defendant Arise From A Common Core Of Facts, All Work Performed Is Compensable As Against Schneider.

Defendants' attempt to portray work related to the claims and defenses raised by NY Medical as unrelated fails. It is well established that even where a Plaintiff prevails only against one of several defendants or brings claims subject to both fee shifting and non-fee shifting

statutes, all work is compensable so long as the claims "involved a common core of facts or were based on related legal theories." Le Blanc-Sternberg v. Fletcher, 143 F.3d 748, 762 (2d Cir. 1998)(citing Hensley). As the Supreme Court has noted, this is because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley at 435. Plaint. MOL at 7.

Here, the claims all arise from a common core of facts. Specifically, all of Plaintiff's claims arose in connection with Defendants' coordinated attempts to collect a purported medical debt. Moreover, the legal work was interrelated on practical level. Discovery against the N.Y. Medical Defendants was directly relevant, *inter alia*, to establishing what Schneider did and why, and to establishing that Schneider regularly engaged in a debt collection and was therefore subject to the FDCPA. Similarly, with regard to settlement, Plaintiff attempted for years to negotiate a global settlement, and was repeatedly rebuffed, with Defendants' counsel repeatedly taking the position Schneider should contribute nothing but be included in the release. Schlanger Decl. at paras. 17-23. To attempt to parse each litigation and settlement activity in such a context is precisely what the case law discourages. Bradford v. HSBC Mortg. Corp., 859 F. Supp. 2d 783, 792-793 (E.D. Va. 2012).

Defendant's reliance on Lucerne Textiles, Inc. v. HCT Textiles, Co, 2013 U.S. Dist. LEXIS 7820, *35-36 (S.D.N.Y. 2013) is unavailing as that case does not appear to have involved related claims based on a common core of facts.

Schneider does, however, have a point to the extent that Plaintiff has already collected some money from other Defendants and should not be entitled to recover that money twice. To address this concern, Plaintiff hereby reduces its request for fees and costs as against Schneider by $37,500, *i.e.* the full amount of money paid to Plaintiff by the Defendants in settlement.

## VI. Plaintiff's Counsels' Hourly Rates Are Reasonable

Defendant argues that Plaintiff's rates are higher than those a reasonable client in the Eastern District would willingly pay, ignoring entirely the evidence Plaintiff's counsel has submitted of its regular hourly rates (including multiple retainers involving matters within the Eastern District, as well as the expert testimony of Expert Douglas A. Kellner, Esq. Instead, Defendant relies on Fawzy v. Gendy, 2013 U.S. Dist. LEXIS 144323, *5-10 (E.D.N.Y. 2013), a recent decision that, as explained below, is -- by its own description – inapplicable.

As a preliminary matter, although Courts are routinely forced to rely upon past decisions as the primary arbiter of reasonableness where counsel fails to submit independent evidence of their market rates, the starting point is the evidence submitted. As the Second Circuit has explained:

> "a reasonable hourly rate" is not ordinarily ascertained simply by reference to rates awarded in prior cases. . . . . Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [the fee shifting statute] and compensation available in the marketplace. This undermines [the fee shifting statute's] central purpose of attracting competent counsel to public interest litigation. . . We do not mean to suggest that the courts have erred in any case where they may have relied exclusively on an hourly rate set in prior caselaw in fixing fee awards. Such reliance may be proper in the absence of any credible evidence by the fee applicant of a higher prevailing market rate.

Farbotko v. Clinton County, 433 F.3d 204, 208-211 (2d Cir. 2005)

Thus, while a court may "take judicial notice of the rates awarded in other cases and… rely on its own familiarity with the prevailing market rates" it must give weight to the "credible evidence" submitted by plaintiff's counsel in support of the requested rate. Id. at 211.

Here, Plaintiff has submitted strong evidence of the rates counsel actually command in consumer and other litigation brought on behalf of individuals, in the form of actual retainer agreements. Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008)( "The . . . rates that plaintiff's counsel actually charge their clients. . . is obviously strong evidence of what the market will bear). Defendant does not address, much less rebut this evidence.

Nor does Defendant address, much less rebut the expert Declaration of David Kellner,

Page 9

Esq. who regularly represents individuals in tenant and consumer litigation in this District and states that the hourly rates of Schlanger & Schlanger, LLP are reasonable and in accord with market rates in this District for attorneys of similar reputation, skill and experience.

To ignore this evidence, as Defendant would have the Court do, is contrary to the law. Farbotko, 433 F.3d at 208-211; In re Continental Illinois Sec. Litig., 962 F.2d 566 (7th Cir. Ill. 1992)(reversing where district court ignored rates actually charged by plaintiffs' attorneys, stating "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.")

Furthermore, Judge Cogan's ruling in Fawzy, was specifically limited to fee awards in the context of liability under the FLSA. Fawzy at *5-10.[3] Indeed, four years before Fawzy, Judge Cogan upheld rates consistent with those requested herein in an FDCPA statutory damages case, holding that an hourly rate of $300 for an attorney with 4 years' experience and $450 for an attorney with 17 years' experience were within the reasonable range for FDCPA cases in this District. Rodriguez, 2009 U.S. Dist. LEXIS 20655, at *2-3.

### VII.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's application in the adjusted amount of $145,486.25 for fees and $4952.69 for costs.

Dated: February 21, 2014

Respectfully,

Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
T. 914-946-1981/ F. 914-946-2930
daniel@schlangerlegal.com

---

[3] Not only was the Court's decision explicitly limited to rates in FLSA case, but the Court also made clear that it might, in another, less straightforward FLSA case, find counsel's rate of $400/hour reasonable.