UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIELLE DOUYON,<br><br>               Plaintiff,<br><br>               v.<br><br>NY MEDICAL HEALTH CARE, P.C.,<br>SEYMOUR SCHNEIDER, *a/k/a SY SCHNEIDER*,<br>KOUROSH GOLYAN, *a/k/a DAVID GOLYAN*,<br>NATHAN KHAIMOV,<br>FARAIDOON DANIEL GOLYAN, M.D.<br><br>               Defendants. | **DECLARATION OF**<br>**DANIEL A. SCHLANGER, ESQ.**<br><br>Index No.: 10-cv-3983<br><br>Hon. A. Kathleen Tomlinson |

DANIEL A. SCHLANGER hereby declares, pursuant to 28 U.S.C. § 1746, that the following facts are truthful:

1.     I am an attorney duly admitted to practice law in the State of New York and in the United States District Court for the Southern District of New York.

2.     I am managing partner at Schlanger & Schlanger, LLP, co-counsel for the Plaintiffs in this matter, commenced under the Fair Debt Collection Practices Act (FDCPA), and I am the head of the firm's Consumer Law practice.

3.     I make this Declaration in support of Plaintiff's Reply Memorandum of Law, submitted in further support of Plaintiff's application for attorney's fees and costs.

4.     Specifically, I submit this Declaration to place before the Court my sworn testimony regarding facts regarding this litigation that are referenced in Plaintiff's Reply

Memorandum or that are otherwise relevant to the Court's determination of the pending fee application.

### Schlanger & Schlanger, LLP Staffing

5.  My firm has had five attorneys work on the instant matter over the past four years of litigation, though the overwhelming majority of attorney work (86%) was conducted by me and Peter T. Lane, Esq.

6.  A former employee, Jeanne Christensen, Esq. expended only 13 hours on this matter, and all of these hours were expended prior to Mr. Lane's work on the case which began only after Ms. Christensen left the firm, as is reflected in the contemporaneous time records attached as Exhibit A to my Declaration in Support of the Motion, sworn to on December 10, 2013.

7.  Another attorney in the firm, Elizabeth Shollenberger, Esq., has contributed only 4.4 hours of work on the matter as reflected in the same contemporaneous time records.

### Staffing By Revaz Chachanashvili Law Group PC.

8.  Defendant Schneider has been represented by Revaz Chachanashvili Law Group PC (RVLG) for the entirety of this litigation.

9.  RVLG has, over the course of this litigation, assigned at least 5 attorneys to this case.

10. Specifically, attorneys Revaz Chachanashvili; Andrew Citron; Mathew Sarles and Igor Meystelman have all been significantly involved in the case at various points since its inception, including engaging me in telephone conferences, emails, letter correspondence, motion practice, and negotiations.  Each have made appearances at conferences I have attended in this matter over the past several years.

11. An additional attorney, whose name I do not know has also been involved.

12.     Specifically, at the mandatory settlement conference in this matter on February 4, 2013,
Mr. Schneider was represented by three attorneys from RCLG:  Mr. Citron; Mr.
Meystalman, and another attorney (not Mr. Sarles or Mr. Chachanashvili) whose name I
do not recall.

13.     This individual has not, to my knowledge, entered an appearance in this matter but
participated actively in the settlement conference.  He was fully familiar with the facts
and history of the case and spoke frequently on behalf of Mr. Schneider and the other
Defendants.

14.     At the settlement conference, these three lawyers from RCLG were joined by a fourth
attorney, Louis Valvo, Esq., who appeared on behalf of Defendant NY Medical's
insurance carrier.

### Settlement Negotiations

15.     Over the four years of litigation in this matter, I regularly attempted to reach a global
settlement with all Defendants, but was rebuffed.

16.     With regard to the Defendants other than Schneider, opposing counsel initially declined
to make any offer at all, but later made a series of what can only be described as non-
committal, pseudo-offers (e.g. stating that his clients hadn't authorized any offer at all,
but if Plaintiff committed to $7,500 as global settlement perhaps N.Y. Medical and its
owners could be convinced, etc.).

17.     The proposal was that Mr. Schneider would be included in the release but contribute
nothing.

18. Eventually, after discovery had closed and Plaintiff had won partial summary judgment against Schneider and prevented summary judgment on the many of her claims against N.Y. Medical, the same "non-offer" was made with the amount at $30,000.

19. Again, the proposal was that the settlement would resolve all claims against all Defendants, but that Schneider would contribute nothing.

20. Schneider's settlement position did not change during the February 4, 2013 mandatory settlement conference.

21. Specifically, Mr. Schneider – represented by RCLG -- refused to offer any settlement payment of any kind, whatsoever, despite my repeated requests.

22. With regard to N.Y. Medical and the Golyans, the situation changed immediately after Attorney Valvo relieved RCLG as counsel and took over N.Y. Medical's defense, and Valvo's clients and Plaintiff promptly entered into a settlement agreement dated March 22, 2013, pursuant to which the settling defendants (i.e. all Defendants but for Schneider) paid Plaintiff $37,500[1] and vacated and dismissed the judgment against Plaintiff for $5,378 entered in this action on 11/29/11.

23. Schneider did not make any settlement offer following Plaintiff's settlement with the other Defendants.

24. Nor has Schneider served Plaintiff with any offer of judgment during this litigation.

25. The settlement agreement between Plaintiff and Schneider (ECF Doc. 102) -- pursuant to which Schneider agrees to have judgment entered against him for $1050 in statutory damages pursuant to the FDCPA and NYGBL 349, plus reasonable attorney's fees and costs as determined by the Court -- was Plaintiff's proposal and not a response to any prior offer or proposal by Schneider.

---

[1] The undersigned mistakenly referred to the settlement amount as $37,000 in Plaintiff's moving papers.

26.   Specifically, I made the proposal that ultimately resulted in the Settlement Agreement by email dated 10/4/13.

27.   One significant reason for Plaintiff's decision to settle on the terms entered into is her declining health.

28.   Specifically, Ms. Douyon – who has a history of severe heart problems, including the heart attack and emergency heart surgery underlying Defendants' collection attempts -- suffered a stroke in June 2013.

29.   She has been in ill health since that time, including multiple hospitalizations.

### Errata

30.   I inadvertently included a non-billable entry dated May 4, 2011 in the contemporaneous time records served on opposing counsel.

31.   The entry, for .5 hrs, related to having a decision in this case published, is non-billable and its inclusion in the petition an oversight.

32.   I apologize to this Court for not having caught this error earlier.

33.   Plaintiff's fee request, as set forth in the Reply Memorandum, has been adjusted downward to exclude this time.

34.   In Defendant's Memorandum of Law in Opposition to Plaintiff's Application, Defense Counsel feigns confusion as to the time entry dated 8/1/2011 by our firm's Senior Partner Michael Schlanger, which includes .2 hrs for "Emails with Dalco."

35.   Opposing counsel claims to not know what "Dalco" refers to.  Opp. at 10.

36.   "Dalco", refers to "Dalco Reporting, Inc." -- the court reporting service Plaintiff used for depositions in this case.

**The Factual Context Of Time Spent On Deposition Transcript Errata Sheets And Third Party Subpoena.**

37.    The time records reflect that I spent 5.3 hours preparing errata sheets to Plaintiff's deposition transcript between 10/17/2011 and 10/31/2011, which Defendant (who calculates the entries to 6.3 hours) claims is excessive.

38.    The errata sheets involved unusual circumstances.  Ms. Douyon was initially deposed in English but, when it became clear to me that she was not fully understanding counsel's questions, I requested a translator.  (Ms. Douyon is from Haiti, originally, and her first language is Creole).

39.    The deposition was adjourned and then later conducted  with a translator over parts of three days, with my client needing to break the deposition into segments due to her poor health and medical needs.

40.    The translations, particularly of my client's responses, were at times problematic.

41.    It was in this context that I spent an unusual amount of time preparing errata sheets for the four deposition sessions and conferring with my client regarding same.

42.    The time records also indicate that Schlanger & Schlanger spent 6.6 hours on work related to third party subpoenas on Plaintiff's health insurer and treating physician, including 2.2 hours of law clerk time.  Defendant claims the time is excessive.

43.    The context of the work was as follows.  Defendants' initial subpoena on the insurer was objectionable to Plaintiff on a number of grounds, including its temporal scope, the absence of a non-disclosure provision, and a request that, in addition to providing documents relevant to claims and defenses, the insurer provide "any and all documents relating to allegations of fraud or unethical conduct" by Ms. Douyon.

44. After I informed Defense counsel by letter dated 9/22/2011, of my objections to the subpoena, I was informed by letter from Mathew Sarles, Esq. dated 9/23/2011 that Defendants "decline to change the language of the information requested in the subpoena".

45. This resulted in the need, *inter alia*, to have a law graduate (not yet admitted) conduct research regarding a potential motion to quash.

46. After a telephone conference between myself and Mr. Sarles regarding the issue, Defendants backed down, abandoning their attempt to request "any and all documents relating to allegations of fraud and unethical conduct" and agreeing to a non-disclosure agreement, which was subsequently entered into after I revised Defendants' proposed draft.

47. It was in this context that the firm spent 4.4 hours of attorney time and 2.2 hours of law clerk time on issues relating to third party subpoenas.

48. I declare under the penalties of perjury that the foregoing Affirmation is true and accurate to the best of my knowledge and belief.

DATED:       February 21, 2014

Daniel A. Schlanger, Esq.